THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BRAD LEE RETTIG, Defendant-Appellant.

Third District    No. 79-185

Opinion filed September 17, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Patrick J. Corcoran, State's Attorney, of Carthage (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Following a bench trial, the defendant, Brad Lee Rettig, was found guilty of theft and was sentenced to a 30-month period of probation, conditioned on his serving six months' periodic imprisonment and paying restitution in the amount of $279.25. From this determination, the defendant appeals.

As a preliminary inquiry, it must be determined whether the defendant expressly and understandingly waived his right to a jury trial.

Relevant facts are that on September 18, 1978, a preliminary hearing was held at which no probable cause was found to charge the defendant, and he was released. Subsequently, an indictment was sought, and returned against the defendant. On October 31, 1978, in response to the indictment, the defendant appeared before the trial court *pro se*. After determining that the defendant was indigent, the trial court appointed a public defender to represent the defendant. In the presence of the public defender, the defendant was arraigned on the theft charge. The docket entry for that date indicates that the defendant tendered a plea of not guilty, waived trial by jury, and requested a bench trial. Also, at the defendant's trial, the trial judge indicated that the "Defendant had previously in open court on October 31st waived trial by jury" and had requested a bench trial.

"Every person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court." (Ill. Rev. Stat. 1977, ch. 38, par. 103—6.) This court has determined that it is the responsibility of the trial court to insure that the defendant's waiver of a jury trial was made expressly and understandingly. (*People v. Walton* (1979), 77 Ill. App. 3d 905, 396 N.E.2d 841.) However, that is not precisely the question now before this court.

We are here concerned with the question of to what extent the record must reflect an express and understanding waiver. A trial without a jury can not be upheld, of course, where the record is silent as to jury waiver. (*People v. Banks* (1979), 71 Ill. App. 3d 15, 389 N.E.2d 180.) In *People v. Coleman* (1978), 59 Ill. App. 3d 1050, 376 N.E.2d 277, the report of pro-

ceedings made no reference to jury waiver and the docket entry merely stated "PLEA NOT GUILTY—JURY WAIVED." Based on that record, the court found the absence of a knowing jury waiver.

■■ *Coleman,* however, *is distinguishable from the case at bar. In this* case, though we have no report of proceedings of the arraignment, no bystanders report nor an agreed statement of facts on the jury waiver subject, the docket entry reflects what occurred, as does the trial court's comment on the day of trial. Obviously this is not a silent record as in *Banks,* and the record adequately reflects an express and understanding waiver. *(People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762.) As a result, the defendant's contention that the record does not show that he was properly admonished, and that he did not understandingly waive the right to trial by jury has not been sustained.

■■ Another issue raised by the defendant is whether his conviction must be reversed because a portion of the testimony of his wife, who appeared as a witness for the State, was barred by marital privilege. The State responds by pointing out that the defendant has waived the consideration of the issue for review by failing to object to the evidence at trial and by failing to include an allegation of error to this effect in his post-trial motion. While we agree with the State that this issue has been waived (see *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Matthews* (1979), 69 Ill. App. 3d 65, 387 N.E.2d 10), we must recognize that the defendant has argued that the defense counsel, by failing to object or to include the allegation of error in the post-trial motion, rendered ineffective assistance of counsel.

■■ ■ For the defendant to establish the incompetency of counsel, he must demonstrate actual incompetence, as reflected by the manner of the defense counsel in carrying out his duties as a trial attorney, which results in substantial prejudice without which the outcome would probably have been different. *(People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) The statute providing for the marital privilege in criminal cases states:

> "In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during marriage, except in cases where either is charged with an offense against the person or property of the other, or in case of spouse abandonment, or where the interests of their child or children are directly involved, or as to matters in which either has acted as agent of the other." (Ill. Rev. Stat. 1977, ch. 38, par. 155—1.)

While it is true that some conduct may constitute communication, the mere description by one spouse of conduct by the other does not come under the proscription of this statute. *People v. Simpson* (1976), 39 Ill. App. 3d 661, 350 N.E.2d 517.

■■ The testimony of Norma Rettig here complained of was to the effect that she and the defendant removed the outer wrappings from frozen meat, on which outer wrapping there was attached a label bearing the name of Mary Wells. Since this testimony is clearly descriptive and the conduct testified to can only, by strained interpretation, be categorized as communicative, we find the defendant was not entitled to claim marital privilege and therefore was not substantially prejudiced by the failure of the defense counsel to either object to the testimony or include an allegation of error in the post-trial motion.

A remaining issue is whether there was sufficient evidence presented at the defendant's bench trial to prove him guilty beyond a reasonable doubt. At the trial, the first witness for the prosecution was Mary Wells, who testified that sometime between March 20, 1977, and March 23, 1977, the freezer in an unoccupied house which she owned was broken into and the meat inside, valued in excess of $200 was removed. Deputy Sheriff Bill Ferrill then testified that he and the sheriff went to the Rettig house, as part of their investigation of the theft. This was about one week after Ms. Wells reported the loss of her meat. At the Rettig residence, they were shown the freezer compartment of the Rettig refrigerator by the defendant, and it was observed to be filled with meat, apparently beef, wrapped in cellophane. However, no arrest was made at that time.

The State's last witness was the defendant's wife, Norma J. Rettig. Mrs. Rettig was never charged in connection with her husband for this or any other crime, and hence she was not an accomplice. She testified that, on the evening of March 20, 1977, she returned home and found the top of her previously empty refrigerator full of meat, marked with the name of the Crossland Locker Plant, Bowen, Illinois, with Mary Wells' name and the type of meat enclosed. She further testified that she and the defendant took off the outer wrappings of this meat and placed it back into the freezer wrapped just in the inner cellophane wrappings.

During the cross-examination, Mrs. Rettig admitted that, in her preliminary hearing testimony, she had stated nothing about seeing names on the meat packages. She explained that, after she thought about it, she remembered the label more clearly, and that at the preliminary hearing she only testified to what she thought the authorities really needed because she didn't want to become involved in the matter more than she actually was at the time. She remembered only being questioned at the preliminary hearing about whether she was told where the meat came from. At the time of the preliminary hearing Mrs. Rettig had only recently married the defendant and was then seven months pregnant. Both facts readily explain her reluctance to inform the authorities of any more information than was specifically requested of her.

But she did admit that, between the time she testified at the preliminary hearing and the trial, she and her attorney appeared at the court-

house for the dissolution of marriage proceeding in which she expected her husband to do no more than make an appearance and accept the earlier agreed-upon terms. She admitted, however, that she and the defendant had become engaged in a contested divorce action and at the time of defendant's trial she acknowledged the existence of some hostility as the result of her having a boyfriend. On the other hand, she denied wanting her husband in jail so that he would be unable to visit his daughter. Despite this attempt at impeachment the difference between her earlier testimony and that at trial is explainable.

The only witness for the defense was the defendant. He stated that he was not guilty of the charge. And after hearing the evidence at trial, the same judge who had presided over the preliminary hearing found the defendant guilty.

■■ As a general rule, the determination of the credibility of witnesses is the ultimate responsibility of the trier of fact. The testimony of an accomplice is to be viewed with caution and suspicion, but such testimony if competent and sufficient may even, standing alone, support a conviction. (*People v. Kiel* (1979), 75 Ill. App. 3d 1030, 394 N.E.2d 883.) It is also true, as defendant asserts, that accomplice testimony may be attended with serious infirmities, such as malice towards the accused. (See *People v. Savory* (1978), 62 Ill. App. 3d 750, 379 N.E.2d 372.) However, Mrs. Rettig was not even charged as an accomplice in this case, though her malice for her husband was attempted to be proved otherwise. Regardless, the findings of the trier of fact are entitled to great weight, and the reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. Lawson* (1978), 65 Ill. App. 3d 755, 382 N.E.2d 878.

Norma Rettig's testimony was not so unsatisfactory as to raise a reasonable doubt of defendant's guilt. Mrs. Rettig's testimony was corroborated by that of Officer Ferrill who saw the meat in the refrigerator wrapped only in cellophane, which resulted when the outer white paper wrappings were removed as Mrs. Rettig testified.

Based upon the corroboration of Mrs. Rettig's testimony and the facts surrounding it to rebut the defendant's attempt at impeachment, we do not believe her testimony was inherently unworthy of belief. The defendant's guilt was proved beyond a reasonable doubt. The verdict of the trier of fact and the judgment of conviction were proper and are affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.