**Ronald BROWNSTEIN, Plaintiff,**

v.

**DIRECTOR, ILLINOIS DEPARTMENT OF CORRECTIONS, et al.,**
**Defendants.**

No. 83 C 3477.

United States District Court,
N.D. Illinois, E.D.

Sept. 24, 1984.

Kenneth N. Flaxman, Chicago, Ill., for plaintiff.

Mark L. Rotert, Asst. Atty. Gen., Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SHADUR, District Judge.

Ronald Brownstein ("Brownstein") has petitioned pursuant to 28 U.S.C. § 2254 ("Section 2254") for issuance of a writ of habeas corpus against the Director of the Illinois Department of Corrections and the Illinois Attorney General (for convenience, but without any Eleventh Amendment implications, collectively the "State"). After the State had sent Brownstein on a procedural wild goose chase described in greater detail below, his case ultimately ended up before this Court for a hearing (as required by Section 2254(d)) on the question whether Brownstein had been denied his right to a jury trial. For the reasons set forth in these Findings of Fact ("Findings") and Conclusions of Law ("Conclusions"), found and stated in accordance with Fed.R.Civ.P. ("Rule") 52(a), Brownstein's petition is denied.[1]

---

**1.** To the extent (if at all) any Findings may be considered to state conclusions of law they shall be deemed Conclusions, and to the extent (if at all) any Conclusions may be considered to state findings of fact, they shall be deemed Findings.

**2.** This section borrows heavily from this Court's unpublished March 9, 1984 memorandum opinion and order ("Opinion II") denying respondents' Rule 12(b)(6) motion to dismiss the petition. Opinion II in turn drew upon this Court's decision in *Brownstein v. Circuit Court of Cook County*, 565 F.Supp. 107, 108 ("Opinion I," N.D. Ill.1983). These Findings are essentially uncontested.

*Findings of Fact*

*History of the Case* [2]

1. Brownstein was originally charged with four offenses involving possession of controlled substances. In a bench trial commencing May 28, 1980 (hereinafter simply "May 28"), Cook County Circuit Judge Michael Close found Brownstein guilty as charged and sentenced him to six years' imprisonment. Brownstein (represented by new counsel) then moved for a new trial, asserting he had never signed a jury waiver form or otherwise waived his right to a jury trial. Despite the silence of the transcript as to any such waiver, Judge Close refused to convene an evidentiary hearing and denied the motion based on (1) the court clerk's entry on the half-sheet for the critical date, indicating Brownstein was advised of his right to a jury and waived that right, and (2) Judge Close's own stated recollection of Brownstein's express waiver. Brownstein then filed a motion for reconsideration, also offering affidavits from his trial counsel to negate the jury waiver, but the judge then found he no longer had jurisdiction over the case and declined to evaluate the motion.

2. Brownstein appealed his conviction, specifically raising his Sixth Amendment claim.[3] In affirming Brownstein's conviction, the Illinois Appellate Court rejected that argument:

> We believe that the trial court's finding regarding defendant's waiver is not against the manifest weight of the evidence.

---

**3.** In referring to the Sixth Amendment this Court employs the common (though technically inaccurate) shorthand of invoking underlying provisions of the Bill of Rights directly rather than citing only the Fourteenth Amendment, which has been held to make those provisions applicable to the states. In this case see *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which applied the Sixth Amendment's right to trial by jury to state criminal proceedings.

*People v. Brownstein,* 105 Ill.App.3d 459, 463, 61 Ill.Dec. 352, 355, 434 N.E.2d 505, 508 (1st Dist.1982), *cert. denied,* 459 U.S. 1176, 103 S.Ct. 826, 74 L.Ed.2d 1022 (1983). Both the Illinois Supreme Court and the United States Supreme Court denied review.

3. When this action was first filed, Opinion I dismissed Brownstein's petition based on the State's Attorney's assertion Brownstein had state remedies available under the Illinois Post-Conviction Act, Ill. Rev.Stat. ch. 38, ¶¶ 122–1 to 122–7. Yet when Brownstein then sought post-conviction relief under that Act in the state court, the State's Attorney reversed the State's position and argued the Act was *not* available to Brownstein. At that point the state judge hearing the petition agreed with the State's new legal stance and refused to consider Brownstein's petition.

4. Understandably frustrated by his ride on the State's procedural merry-go-round,[4] Brownstein returned here. This Court then reinstated Brownstein's federal court petition under Fed.R.Civ.P. 60(b)(3) on the ground the previous judgment in the State's favor had been procured by its "misconduct." Then the State moved to dismiss Brownstein's petition, claiming Judge Close's factual determination that Brownstein had waived his right to a jury trial was entitled to deference under Section 2254(d) because it resulted from an adequate state court hearing. That position represented yet another volte-face by the State—totally contrary to its earlier position before this Court that Brownstein had post-conviction state remedies available because (Opinion I, 565 F.Supp. at 109) "Brownstein clearly did not have a meaningful opportunity to introduce his currently-tendered evidentiary support for the claim" before Judge Close. Opinion II de-

nied the State's motion to dismiss, concluding consistently with Opinion I that Section 2254(d) did not preclude habeas review because no adequate hearing had occurred at the state trial court level. Brownstein's petition was set for hearing, and an evidentiary hearing was held May 10 and 11, 1984.

*Events of May 28*

5. Brownstein's May 28 state court transcript shows no jury trial waiver by Brownstein. It does reflect that when Brownstein's case was called Brownstein's attorney Steven Silets ("Silets") immediately moved for a continuance on the ground Brownstein had suffered injuries (torn ligaments of the rib cage) in an auto accident some days before and was under medication for that condition. Judge Close denied Silets' motion. It was not Silets but one of Brownstein's other attorneys, Herbert Abrams ("Abrams"), who was to try the case.[5] Because Abrams was not present, the court recessed while Silets called Abrams and Abrams made his way to court. When Abrams arrived and Brownstein's case was recalled, the transcript shows Abrams immediately raised his concern as to his inability to obtain a transcript of some testimony Abrams hoped to use for impeachment purposes. After discussion of that concern, one of the prosecutors requested and obtained a five or ten minute recess for an apparently unrelated purpose. Brownstein's case then went promptly to trial before Judge Close, commencing with opening statements. Thus the transcript reflects neither (a) a colloquy in which Brownstein waived his right to a jury trial nor (b) any recess or off-record discussion during which Brownstein could have discussed his right to a jury trial with Judge Close.

---

**4.** This metaphor is scarcely original with this Court. To Illinois' discredit, the present episode is a repetition of what once made Illinois a byword for an impenetrable maze of procedural obstacles to post-conviction relief—as to which Justice Rutledge used the same "merry-go-round" characterization in his noteworthy concurring opinion in *Marino v. Ragen,* 332 U.S. 561, 570, 68 S.Ct. 240, 245, 92 L.Ed. 170 (1947)

(per curiam). As to this Court's long-ago vicarious contact with that distressing story, see the history recounted in *United States ex rel. Johnson v. McGinnis,* 571 F.Supp. 270, 274 & n. 6 (N.D.Ill.1983).

**5.** Still another attorney, Steven Zuker, also worked on Brownstein's case.

6. At this Court's May 10–11, 1984 hearing, Nikki Whittingham ("Whittingham"), Judge Close's court reporter on May 28, as well as Brownstein and Abrams all testified that the transcript accurately depicts what occurred at the beginning of Brownstein's trial. According to those three witnesses Brownstein did *not* waive his right to a jury trial during any court recess of May 28, and the transcript accurately shows Judge Close did *not* go off the record to discuss such matters with Brownstein. Whittingham was particularly convincing because she had no motive to misrepresent the events of May 28 intentionally, and her clear memory of details not appearing in the transcript (such as Brownstein's appearance on that day and which persons ordered that transcript) demonstrates she also is unlikely to have forgotten those events or to have misrepresented them unintentionally. Accordingly this Court credits the testimony of Whittingham, Brownstein and Abrams as corroborated by the official transcript. It concludes Brownstein was not admonished of his right to jury trial by Judge Close on May 28.

7. Judge Close's testimony is to the contrary.[6] Judge Close testified he presided over more than one bench trial in which Brownstein was the defendant, and he specifically recalled that on May 28 he admonished Brownstein as to his right to a jury trial, received a signed jury waiver from Brownstein through Abrams and discussed with Brownstein the seriousness of a Class X felony charge. Although this Court does not find Judge Close intentionally misrepresented the events of May 28, his testimony simply cannot prevail over the combined weight of the testimony of the other three witnesses and the corroborating transcript. Obviously this Court must find *someone* is mistaken about what took place. Four factors compel the rejection of Judge Close's testimony on whether Brownstein was admonished as to his right to jury trial:

(a) By Judge Close's own estimate he has disposed of about 700 or 800 criminal cases from May 28, 1980 to the time of his appearance at this Court's hearing May 10, 1984. Unless a jury trial actually is requested, each defendant must be apprised of his or her right to a jury trial. That makes the jury-trial-admonition process tremendously commonplace to Judge Close. This Court knows how difficult it is to recall a particular day's proceedings years in the past—that same effect must take its toll on the recollection of Judge Close, especially when the proceedings in question are not particularly novel.

(b) In contrast to Whittingham, Judge Close accurately recalled few details surrounding the proceedings of that day. He was very tentative about testifying to any such details, and on those occasions when he ventured a cautious opinion about background facts or events he was often wrong.[7]

(c) No written waiver (which Judge Close maintained Brownstein executed) was ever produced or has ever been found.

(d) Most importantly, Brownstein had appeared before Judge Close as a defendant in a bench trial (represented by the same counsel) a few months earlier. In that earlier case Brownstein was charged with a Class X felony.[8] Thus that case

6. At this Court's hearing Judge Close gave his first name as "Michael." Thus the official state court transcript was mistaken in referring to him as "Sylvester" (there is no "Sylvester Close" among the Circuit Court Judges).

7. For example:
   1. Judge Close testified (R. 54–55) he believed Brownstein's case was first called at about 10 a.m., at which time Brownstein was not present but Abrams was present and sought a continuance, and again about noon, when both were present. As Finding 5 shows, the state court transcript indicates the converse: Brownstein was present initially and Abrams was not.
   2. Judge Close recalled (R. 37) Brownstein graduated from Mather High School, while in fact Brownstein had attended Senn High School but never graduated.

8. Brownstein's counsel asserts (Post-hearing Mem. 1–2 n. 1) no Class X charge was involved in the May 28 hearing at all. If that is true (and the State does not respond to that issue) the

very likely involved an admonition by Judge Close to Brownstein about his right to jury trial and the seriousness of a Class X felony charge, and perhaps involved a written waiver by Brownstein as well. Taking all the evidence into account, the best reconciliation of the conflicting testimony is that Judge Close was probably thinking of that earlier proceeding when he mistakenly testified he remembered the May 28 events in his courtroom.

8. True enough, a statement in the state trial court's half-sheet entered by Judge Close's clerk Evelyn Walton indicates Brownstein was advised of his right to trial by jury and waived that right. However that entry could have been made as a matter of course regardless of what occurred (indeed when Brownstein originally moved for a new trial, his counsel sought to present oral testimony from the clerk to that effect, but Judge Close rejected that offer), and this Court finds that is what happened in this instance.

9. While this Court has found the state court's transcript accurately indicates Judge Close did not admonish Brownstein as to his right to a jury, that is not the end of the story. Brownstein testified he became concerned about the prospect of a bench trial when Judge Close appeared irritated with Brownstein's attorneys and expressed a firm determination to go to trial that day. This Court credits Brownstein's account (R. 26–28) of his conversation with his attorneys and his understanding of what was taking place:

Q. Mr. Brownstein, after the trial began you told your attorneys, you mentioned to your attorneys that there was no jury present?

A. No. I said to my lawyer after the first continuance—after the first recess or whatever you would call it, until such time and [sic] Mr. Zucker or Mr. Abrams could come to the court for the trial, in

between then I had asked Mr. Abrams, I said, this judge is denying every motion that we make. He is mad as hell. Don't you think we should take a jury trial.

Q. What was the reply?

A. "Just hold off a couple of minutes." And then we went on, and on and on and at that point, you know, he saw and I saw that, you know, we weren't offered a jury trial.

Q. ... When the comment was made that you weren't offered a jury trial, the lawyers told you not to say anything about it, didn't they?

A. I wasn't told that. I think to be honest with you, I noticed it before the lawyer did.

Q. And when you noticed it you brought it to the lawyers' attention?

A. I believe so, best of my recollection.

Q. And that is because you realized that something hadn't been done properly. There apparently had been some mistake made and you weren't given the warning about the jury trial.

A. No. That wasn't the reason. The reason was that I saw how the judge was acting, and I felt that I was going to, more or less, I don't know the term, get the book thrown at me, get laid away, and I saw that I didn't, at that point I wanted to cover myself. Let me put it that way.

Q. You wanted a jury, is that what you are saying?

A. Yes. I discussed it. I mentioned it to him, and he kind of put me on hold.

Q. You knew you had a right to a jury?

A. Yes, I know that.

Q. And you told your lawyer that you were concerned about having a jury?

A. Yes, I told them I was concerned about having a jury.

Q. And they basically—excuse me. I am sorry to interrupt. They basically

---

finding in the text is even more strongly buttressed by the objective facts. But because the exhibits are not entirely clear on that score, this Court's findings have been made on the assump-

tion *both* cases involved Class X felonies—and even so Judge Close's recollection was plainly wrong.

answered by saying the judge made a mistake and you should say nothing because if you were convicted his mistake in not advising you about a jury trial would mean you would get a free trial?

A. I don't remember the exact words, but that is the way it worked out. He more or less told me, he said, let us see what happens.

10. Brownstein's attorneys believed Brownstein could obtain a tactical advantage from Judge Close's failure to offer him a jury trial. They undoubtedly hoped Judge Close would acquit Brownstein as he had done once before, figuring they could always object to Judge Close's failure to admonish Brownstein if a conviction resulted the first time around. It cannot be said with any degree of certainty Brownstein himself held back his objection to a bench trial for tactical reasons. But his attorneys did, and Brownstein followed their advice by not interrupting his attorneys' conduct of the case, perhaps without knowing the reasons for that advice at the time.

11. Nothing in Findings 9 and 10 means Brownstein's counsel were even remotely deficient in their handling of his case. Their tactical decision not to object was well within the range of competent representation. Brownstein's second thoughts about a bench trial were in the face of a previous decision by Brownstein and his counsel not to request a jury trial. If Abrams had then objected to the failure to offer Brownstein a jury trial, Judge Close no doubt would promptly have given Brownstein the same speech he had given him a few months before. Brownstein and his counsel would then have had a brief opportunity to discuss their preferred course of action once again, but the consequences would have been precisely the same. Whatever factors led them to choose a bench trial originally (say the favorable verdict Brownstein obtained

from Judge Close a few months earlier) were still present and led to their sticking with that decision. Had it been otherwise, Brownstein and his lawyers—both fully *aware* of the right to a jury trial, as Brownstein's own forthright testimony confirms—would have opted to go that route instead. Thus nothing at all could have been gained by pointing out Judge Close's oversight to him. On the other side of the ledger, counsel's remaining silent gave them a double chance: They could wait for Judge Close's verdict and pursue their objection at that time if Judge Close found Brownstein guilty. Thus the decision not to object can only be described as a tactical one stemming from competent (though not necessarily forthright) representation.[9]

### Conclusions of Law

■ 1. Findings 5–8 confirm this Court's conclusion in Opinion II, slip op. at 5–7: Judge Close's finding that Brownstein expressly waived his right to jury trial in open court May 28 is not entitled to deference under Section 2254(d). No potentially applicable provision—Section 2254(d)(2), (3) or (6)—saves Judge Close's finding, for it did not result from *any* hearing, much less an adequate one. While of course a state court finding of fact may be correct even though it does not result from a hearing, the one at issue here was not. This Court has found Brownstein's right to trial by jury was not mentioned in Judge Close's courtroom May 28. Consequently there was no express waiver by Brownstein on that date.

■ 2. Judge Close's failure to conduct a colloquy with Brownstein as to his right to a jury trial does not however require the conclusion Brownstein's constitutional rights were violated. While of course such a procedure is much preferred, the Sixth Amendment does not require it.

---

9. This Court is not called on to decide whether it would be ethical for Brownstein's counsel (a) not to have objected when they noticed the error and then (b) to raise the objection after the verdict was announced. Brownstein was represented by new counsel when he ultimately raised his jury trial objection. In any event there is no reason in this context why any such consideration should have any bearing on whether Brownstein's counsel provided competent representation.

See *United States v. Scott*, 583 F.2d 362, 363–64 (7th Cir.1978) (per curiam). What the Sixth Amendment does mandate is that some evidence show the defendant himself knowingly and intelligently waived his right to trial by jury. See *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1182–83 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). But this Court does not reach the knowing-and-intelligent-waiver question, for it concludes Brownstein (by his own actions and those of his attorneys) has waived his right to further habeas review of his claim.

■ 3. Both in its most recent motion to dismiss and in its post-hearing submission, the State has urged that Brownstein's actions constitute a procedural default simply because he did not raise Judge Close's error when he first noticed it. That analysis misses the mark, because cases involving "procedural default" (as that term is generally used) turn on the need to enforce the State's own vindication of its interest in orderly procedure. See, e.g., *Weber v. Israel*, 730 F.2d 499, 502 (7th Cir.1984). To reiterate what this Court said in dealing with the State's motion to dismiss (Opinion II, slip op. at 8–9), only a State can declare a state-level procedural default. If the State forgives a procedural default and proceeds to consider the merits of a constitutional claim, habeas corpus review normally is available. *Farmer v. Prast*, 721 F.2d 602, 605–06 n. 5 (7th Cir.1983). See *County Court of Ulster County v. Allen*, 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–2223, 60 L.Ed.2d 777 (1979). There is no question here but that the Illinois Appellate Court considered the merits.

4. That is not to say however that federal courts considering habeas corpus petitions cannot assert *their own* interest in orderly procedure. True enough federal courts' enforcement of their own interest in

orderly procedure is much less pervasive in habeas corpus litigation since *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977) announced federal courts would henceforth honor *state* findings of procedural default on habeas review unless the petitioner can show "cause" and "prejudice" pertaining to his default. Until *Sykes* the view generally prevailing was that "the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings." *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963). Because federal courts had jurisdiction to consider habeas corpus petitions regardless of petitioners' state procedural defaults, *Noia* directed lower courts to formulate their own rules about when to deny relief on procedural grounds. Thus before *Sykes* federal courts often made their own determinations (independently of state law) whether a petitioner had forfeited his constitutional rights by his actions in state court, while since *Sykes* federal courts have relied to a much greater degree on state court determinations of the propriety of petitioners' state procedural activities.

5. Here there is no state court finding of procedural default entitled to deference under *Sykes*—there is only a finding Brownstein expressly waived his right to a jury trial. As Conclusion 1 reflects, this Court has already rejected that finding pursuant to Section 2254(d). But the "limited discretion" *Noia*, 372 U.S. at 438, 83 S.Ct. at 848 afforded federal courts "to deny relief to an applicant under certain circumstances" was only eclipsed, not revoked, by *Sykes*.[10] Federal courts' exercise of that discretion was "governed by equitable principles" (*id.*), and those principles still should be followed in those rare cases (such as this one) when *Sykes* does not

---

**10.** Probably the most obvious example of that proposition is federal courts' rejection of habeas corpus petitions raising claims not raised (although available) in earlier federal petitions. See, e.g., *Sanders v. United States*, 373 U.S. 1,

17–18, 83 S.Ct. 1068, 1078–1079, 10 L.Ed.2d 148 (1962). That concept has now been codified as Rule 9(b) of the Rules Governing Section 2254 Cases.

apply but there is nonetheless an arguable deficiency in the manner in which petitioner conducted himself at the state level.[11]

6. This Court therefore turns to identification of any such equitable principles applicable here. *Noia*, 372 U.S. at 438, 83 S.Ct. at 848 announced the principle a "federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state court and in so doing has forfeited his state court remedies." That principle may not seem applicable at first blush, because there has been no official conclusion by a state court that Brownstein "has forfeited his state court remedies." But application of the "deliberate by-pass" principle is not subsidiary to state courts' determinations as *Sykes'* "cause and prejudice" standard is. *Noia*, 372 U.S. at 439, 83 S.Ct. at 849 instructed federal courts to apply the "deliberate by-pass" test independently of state court determinations. Moreover it must be remembered *Noia* was decided in the years before *Sykes* required deference to state court findings of procedural default, so by far the most common application of *Noia*'s "deliberate by-pass" standard was when a state court actually had concluded the petitioner "has forfeited his state court remedies."

■ 7. Cases decided between *Noia* and *Sykes* indicate *Noia*'s "deliberate by-pass" standard can be met when (a) a petitioner has foregone a timely objection at the advice of competent counsel or (b) foregoing such an objection was intended to secure some benefit for the petitioner. For example, *McMann v. Richardson*, 397 U.S.

759, 768–69, 90 S.Ct. 1441, 1447–1448, 25 L.Ed.2d 763 (1970) held petitioner's habeas corpus objections to the admissibility of his confession were waived if his guilty plea were entered on advice of competent counsel.[12] *Cf. United States ex rel. Healey v. Cannon*, 553 F.2d 1052 (7th Cir.) (objection to admissibility of confession not waived when guilty plea entered on advice of incompetent counsel), *cert. denied sub nom. Mitchell v. Healey*, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977). *Montgomery v. Hopper*, 488 F.2d 877 (5th Cir.1973) illustrates the latter aspect of the "deliberate by-pass" test, that foregoing an objection to obtain some benefit can indicate a "deliberate by-pass." There the court held it was not enough that petitioner (who was unrepresented by counsel in state court) knew he missed his opportunity to appeal; he must not only knowingly but *understandingly* forego state remedies. *Montgomery*, 488 F.2d at 879 held such an understanding by-pass in that case required some finding the petitioner forewent an appeal "in order to secure some benefit to the petitioner."[13]

■ 8. Here Brownstein's objection to Judge Close's failure to admonish him was not timely—that is, in the sense it would no longer be fair to hear it at this time. Brownstein and his attorneys knew before Judge Close rendered his verdict that an error (failure to advise Brownstein of his right to jury trial) had been committed, but they waited for the verdict in an attempt to obtain an extra shot at an acquittal. In delaying their objection Brownstein and his attorneys deliberately by-passed a clearly adequate state remedy: They could have

11. Thus this Court's answer to the recurring scholarly question "Does *Noia* survive *Sykes?*" is a limited yes—at least in the unusual situation when *Noia* would counsel the denial of habeas relief although *Sykes* would not require such denial. *Sykes* has been universally perceived as a lessening of the federal courts' involvement in state criminal proceedings. It would be anomalous to find a habeas petition flawed under *Noia* but somehow revived by the narrowing decision in *Sykes.*

12. It undoubtedly has been said *Richardson* sounded the death knell for *Noia*. But undeniably federal courts were still at that time applying their own rules of procedural default and waiver, not deferring to state court findings as they now often do pursuant to *Sykes.*

13. *Montgomery*, 488 F.2d at 880 later redefined the term "benefit" as "any tactical or strategic advantage in the pursuit of [petitioner's] claim."

raised the objection before Judge Close's announcement of his verdict and thereby obtained a prompt admonition and explanation by Judge Close of the right to a jury trial. Whether that deliberate by-pass was intended to provide an opportunity for state appellate relief or federal habeas corpus relief in the event of a guilty verdict is not relevant, because either way the by-pass was intended to substitute two chances at a not guilty verdict for one.

9. Moreover both indicia of *Noia*'s "deliberate by-pass" standard are present here:

(a) This Court has already found Brownstein's decision not to object was rendered on advice of competent counsel. Finding 10 indicates that decision was pursuant to advice of counsel, however curt. Finding 11 indicates the evidence adduced at the hearing does not support any inference Brownstein's attorneys were not competent. It should be added Brownstein has not made any such claim of incompetent advice.

(b) Brownstein's decision not to object was also made in return for a tactical advantage. Finding 10 indicates Brownstein's attorneys were motivated by the prospect of a free chance of an acquittal.

This Court concludes Brownstein deliberately by-passed an adequate state remedy (as those terms have been construed in cases decided since *Noia*). Thus he has given up his right to habeas relief.[14]

\* \* \*

Brownstein's petition for habeas corpus is denied. This action is dismissed with prejudice.

---

**14.** Except for this Court's finding as to why Brownstein and his lawyers did not timely raise their claim before Judge Close, this case is strikingly similar to *United States ex rel. Adams v. Bensinger*, 507 F.2d 390 (7th Cir.1974), *cert. denied*, 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 789 (1975). In *Adams* the state court criminal conviction had been affirmed on the ground petitioner had not raised an appropriate objection before the trial judge. On habeas review the Court of Appeals found petitioner's objection *was* appropriate, thus rejecting the ground on which petitioner's conviction had been affirmed (just as this Court has done). Nonetheless before reaching the merits of petitioner's constitutional claim *Adams*, 507 F.2d at 393 asked (as *Noia* required) whether "there was a failure to raise" the claim "in order to further an intended strategic maneuver." Because *Adams* answered that factual question in the negative, it went on to grant habeas relief. Because this Court has answered that same factual question in the affirmative, Brownstein has no right to relief here.