Ronald BROWNSTEIN,
Petitioner-Appellant,

v.

DIRECTOR, ILLINOIS DEPARTMENT OF CORRECTIONS, et al.,
Respondents-Appellees.

No. 84–2756.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1985.

Decided April 30, 1985.

As Amended May 17, 1985.

Kenneth N. Flaxman, Chicago, Ill., for petitioner-appellant.

Scott Graham, Asst. Atty. Gen. of Ill., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and PELL, Senior Circuit Judge.

CUDAHY, Circuit Judge.

In a hearing on this petition for a writ of habeas corpus, the District Court for the Northern District of Illinois determined: that petitioner Brownstein had not made an express waiver, at his trial in Illinois courts, of his right to a jury; that the state appellate court had improperly found that he had expressly waived the right; that because there was no state determination of procedural default the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), did not apply; but that, nevertheless, since the plaintiff knew that the trial

judge had failed to inform him of his right, and since he hoped to get a new trial on that ground if he lost on the first, federal relief would be inappropriate under the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

## I.

Ronald Brownstein is a state prisoner, serving a six-year prison term for a series of drug-related offenses. His convictions were affirmed in part and vacated in part by the Illinois Appellate Court. *People v. Brownstein,* 105 Ill.App.3d 459, 61 Ill.Dec. 352, 434 N.E.2d 505 (1982). The Illinois Supreme Court denied leave to appeal and Brownstein moved for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his sixth and fourteenth amendment right to jury trial was denied where the record failed to indicate that he had made a knowing and voluntary waiver of that right. After a number of false starts, due in large measure to what can most generously be described as confusion on the part of the prosecutors, the district court ordered an evidentiary hearing. The facts that follow emerged at that hearing.

When Brownstein was brought to trial on May 28, 1980, the state trial court judge neglected to admonish Brownstein of his right to a jury trial. Brownstein, who testified at the habeas hearing that he had been fully aware of his right to a jury trial, inquired of his lawyers whether he ought not to ask for a jury; the judge seemed to him in a bad mood. His lawyers put him off:

Q. And they basically ... answered by saying the judge made a mistake and you should say nothing because if you were convicted his mistake in not advising you about a jury trial would mean you would get a free trial?

A. I don't remember the exact words, but that is the way it worked out. He more or less told me, he said, let us see what happens.

594 F.Supp. 494, 498–99 (N.D.Ill.1984).

After the state court judge found him guilty and sentenced him, Brownstein moved for a new trial on the grounds that he had never waived his sixth and fourteenth amendment right to a jury trial. The trial judge refused to convene a hearing on the issue, mistakenly finding that he *had* admonished Brownstein and received from him an express waiver of the right to jury trial. The Illinois Appellate Court, holding that the finding of express waiver was not against the manifest weight of the evidence, denied Brownstein relief on the sixth amendment point.

Then began a procedural chase through federal and state courts, due largely to dubious representations on the part of the state's attorneys about whether Brownstein had exhausted his state remedies. *See* 594 F.Supp. at 496. The chase finally ended when the Northern District of Illinois granted Brownstein an evidentiary hearing.

After finding the facts as we have described them (and finding in addition that no mention of a jury trial had been made in open court on the day of Brownstein's trial), the district judge concluded that the finding of express waiver was not entitled to deference under 28 U.S.C. § 2254, since no hearing had ever been held in state court to determine whether the state trial judge had admonished Brownstein of his rights. He also concluded that in fact Brownstein had not been properly admonished of his rights.

All of this presented the district judge with a dillemma. The state appellate court had not found procedural default (finding in fact that Brownstein had expressly waived his right to a jury trial); and, believing that *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), required deference to this state court finding, he felt that under the *Sykes* standard the constitutional issue of waiver of jury trial would have to be reached. At the same time, the plain fact—admitted forthrightly by Brownstein at the hearing—was that he knew full well of his right and planned, on his counsel's advice, to use the

judge's omission to secure a new trial should he lose the first time around. Such behavior certainly ought to preclude habeas review of the constitutional points. The district judge resolved his dilemma by reaching back beyond *Sykes* to *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), wherein the Court had held that "deliberate bypass" would preclude habeas review. The district court reasoned:

> [O]nly a State can declare a state-level procedural default [such as is required by *Sykes* ]. If the State forgives a procedural default and proceeds to consider the merits of a constitutional claim, habeas corpus review normally is available.... There is no question here but that the Illinois Appellate Court considered the merits.
>
> That is not to say, however, that federal courts considering habeas corpus petitions cannot assert *their own* interest in orderly procedure. True enough, federal courts' enforcement of their own interest in orderly procedure is much less pervasive in habeas corpus litigation since *Wainwright v. Sykes* ... announced federal courts would henceforth honor *state* findings of procedural default.... [S]ince *Sykes* federal courts have relied to a much greater degree on state court determinations of the propriety of petitioners' state procedural activities.
>
> Here there is no state court finding of procedural default entitled to deference under *Sykes*—there is only a finding Brownstein expressly waived his right to a jury trial.

594 F.Supp. at 500 (emphasis added). Thus, he concluded, under *Sykes* habeas review could not be denied.

> But application of the [*Noia* ] "deliberate by-pass" principle is not subsidiary to state courts' determinations as *Sykes'* "cause and prejudice" standard is.

594 F.Supp. at 501. Thus under *Noia* —though not under *Sykes*—he found that he had the discretion to deny the writ, and he did. In a footnote he suggested that this outcome established that *Noia* has, in fact, survived *Sykes*.

While we feel that the denial of the writ is appropriate, the state has presented us with an interpretation of the district court opinion which we feel merits some discussion.

## II.

In *Fay v. Noia,* the United States Supreme Court held that although procedural default in state court might be an adequate and independent state ground precluding direct review of a state decision in that Court itself, the same principles did not govern habeas review. Procedural default would not bar habeas review unless the "suitor's conduct in relation to the matter at hand ... disentitle[s] him to the relief he seeks." 372 U.S. at 438, 83 S.Ct. at 848. In particular, "the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Id.*

Over the years the "deliberate by-pass" standard eroded, until finally in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court held that where a petitioner had failed to comply with a Florida state procedural rule requiring that a motion to suppress evidence be made before trial, habeas review was barred if the petitioner could not show both that he had cause for the default and that he suffered actual prejudice thereby. The Court reasoned that the *Noia* standard might encourage "sandbagging;" and although the Court did not explicitly overrule *Noia,* it replaced the "deliberate by-pass" standard with the "cause and prejudice" standard in the context of state contemporaneous objection rules. 433 U.S. at 87–88, 97 S.Ct. at 2506–2507. In this circuit the "cause and prejudice" test was extended to state failure-to-appeal cases in *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 361 (7th Cir.1983). The Supreme Court itself has read *Sykes* expansively; in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court said

that the considerations underlying *Sykes* supported the ruling that

> when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice.

456 U.S. at 129, 102 S.Ct. at 1572. The Court rejected a request to limit the holding to errors that did not affect the truth-finding function of the trial.

Although *Sykes* is generally read as creating a higher hurdle for habeas litigants to get over than *Noia* did, creating in effect a rebuttable presumption that default would bar review where *Noia* had presumed that default would not bar review, the district court found that in the circumstances before us *Noia* bars review of a case that *Sykes* would allow. The court's reasoning is that *Sykes* requires deference to state court determinations of default whereas *Noia* does not, and in this case the state court mistakenly did not declare a default.

█ The district court is certainly right in thinking that, under *Noia*, federal courts can look beyond state court determinations of default. But so can we look beyond state court determinations under *Sykes*. In *Sykes* itself the federal courts did that very thing. The issue was whether habeas review would be available on the question of the admission of evidence in spite of the fact that the petitioner had forfeited the right to review of that issue in state courts. The Court found that the petitioner *had* forfeited his right of review in state courts, in spite of a state court holding to the contrary:

> In a subsequent state habeas action, the Florida District Court of Appeals, Second District, stated that the admissibility of the post arrest statements had been raised and decided on direct appeal....

The United States District Court in the present action explicitly found to the contrary, ... and [Sykes] does not challenge that finding.

433 U.S. at 75 n. 3, 97 S.Ct. at 2500 n. 3. The district court was incorrect in thinking that *Sykes* precludes our looking behind state court determinations concerning procedural default. Where the federal court is entitled to go behind the state court ruling, and finds that the state court was wrong and that there was procedural default, the federal court is required to deny the writ unless cause and prejudice are shown—*a fortiori*, to deny the writ where the default was strategic and deliberate. Where there has been a by-pass of a state procedural requirement, regardless of the state court determination, there is no need to go beyond *Sykes* to close the door of the federal court to the habeas litigant.[1]

### III.

The state has read the district court opinion as entailing that there has been a default in this case, but no one has made any effort to make clear to us just how the petitioner is supposed to have defaulted. If there has been a default, then, as the state argues and as we have shown above, there is no reason to go beyond *Sykes* to find reason to exclude the petitioner from the federal courts. If there has been no default, then *Sykes* is not applicable, and unless we can find ground in *Noia* for denying the writ, the merits of the petitioner's claim will have to be reached. Because we agree with the district judge that *Noia* is broader than *Sykes* in at least this respect, allowing us to refuse relief even where there has been no procedural default, we think the district court was right in not reaching the merits. But we take this opportunity to make clear our impression that the state is mistaken in thinking

---

1. Some circuits have taken the view that procedural matters more likely to involve decisions of the defendant himself—rather than those of his counsel alone—remain subject to the *Noia* rather than to the *Sykes* standard. *See, e.g., Graham v. Mabry*, 645 F.2d 603, 606–07 (8th Cir.1981); *cf. Sykes*, 433 U.S., at 91–94, 97 S.Ct. at 2508– 2510 (Burger, C.J., concurring). Examples of such matters are the decision to appeal on an issue, and the right to a jury trial. In this circuit we have tended not to distinguish in this way between trial errors, objection to which is the exclusive domain of the trial counsel, and other matters. *See Spurlark, supra.*

that in these circumstances there has been a procedural default under Illinois law (a proposition for which the state offers no authority). What precedent we find on the matter seems to us to go the other way. *Sykes* does not apply, we believe, not because there was no state determination of procedural default, but because there was no procedural default in fact; and if *Noia* applies, it is not because of any deliberate by-pass of a procedural requirement, but because of strategic behavior which, under the equitable principles announced in *Noia,* allow a federal court to close off federal relief.

### A.

■ If there has been a procedural default, then we believe the state is right, and the cause and prejudice standard applies; and if it applies, it applies in the case in which the default was inadvertent. That is the very meaning of *Sykes:* that a default need not be intentional to preclude review. Thus, as the state interprets the district court ruling, the petitioner who has done innocently what Brownstein did deliberately will have to show cause and prejudice to get habeas review.

But that outcome is insupportable. Suppose that the circumstances had been the same except that Brownstein and his lawyer had merely neglected to raise the jury trial question at trial. Suppose that the state court of appeals, and all subsequent reviewing courts, relying on the word of the trial judge, had found that Brownstein expressly waived his right to a jury trial. Suppose further that the federal habeas judge was as conscientious as the federal judge in this case, and found that the determination of express waiver was incorrect. If Brownstein, under those circumstances, had defaulted procedurally, he would now have to show cause and prejudice to get federal habeas review; but since the jury trial issue had merely slipped his (and his

attorney's) mind, he would not be able to show cause. And therefore, on the theory that there has been a procedural default, he gets no review in those circumstances.

### B.

■ But evidently there has been no default, in Illinois, in those circumstances. A procedural default cuts off further state remedies, and Illinois, in these circumstances, would not cut off review. In Illinois, the responsibility is on the trial judge to secure an express waiver in open court, *People v. Clark,* 30 Ill.2d 216, 195 N.E.2d 631, 634 (1964); *People v. Jones,* 93 Ill. App.3d 475, 417 N.E.2d 647, 651 (1981), and where none appears on the record, a new trial is in order, *People v. Villareal,* 114 Ill.App.3d 389, 70 Ill.Dec. 324, 327, 449 N.E.2d 198, 201 (1983). There seem to be no exceptions to this rule; lack of an express waiver—which can, however, be made by counsel, *People v. Murrell,* 60 Ill.2d 287, 326 N.E.2d 762, 764 (1975); *People v. Spain,* 91 Ill.App.3d 900, 47 Ill.Dec. 451, 455, 415 N.E.2d 456, 460 (1980); *People v. Neeley,* 79 Ill.App.3d 528, 35 Ill.Dec. 38, 41, 398 N.E.2d 988, 991 (1979)—is grounds for reversal. *People v. Villareal, supra,* at 202; *People v. Rettig,* 88 Ill. App.3d 888, 44 Ill.Dec. 7, 8, 410 N.E.2d 1099, 1100 (1980). Petitioner need not raise the issue at trial to preserve it, *People v. Smith,* 10 Ill.App.3d 61, 293 N.E.2d 465, 466 (1973); he need not even raise it in his post-trial motion, *People v. Murff,* 69 Ill. App.3d 560, 26 Ill.Dec. 90, 93, 387 N.E.2d 920, 923 (1979); it suffices that he raise it on appeal, and no actual prejudice need be shown, *People v. Miller,* 55 Ill.App.3d 1047, 13 Ill.Dec. 825, 827, 371 N.E.2d 917, 919 (1977). We therefore see no procedural requirement the neglect of which by Brownstein amounts to a default; and if Brownstein's hands were clean in this matter, no cause and prejudice would be necessary to get him his writ.[2]

---

**2.** It might be argued that something that does not amount to a procedural default when done inadvertently can nevertheless be a procedural default when done deliberately. However, as

we understand the term, "procedural default" requires the by-pass of a procedural requirement, and not merely the by-pass of a procedural opportunity. It would be odd if questions of

## C.

But if there has been no procedural default in this case, so that *Sykes* does not apply, does it follow that the merits of the petitioner's claim must be reached? We think not. We interpret the district court's reasoning differently from the way the state interprets it. As we understand what the district judge has to say about the matter, a "deliberate by-pass" in the *Noia* sense does not require a procedural default. As the district court said, the discretion granted by *Noia* was broader than that granted by *Sykes*. In our judgment, *Noia* goes beyond procedural defaults and allows federal judges to deny habeas relief whenever the petitioner's strategic behavior clearly requires it. We caution that such cases, where *Noia* will apply though *Sykes* does not, will be rare; in this case the district judge had the benefit of the petitioner's candid admission that his attorney had suggested using the trial judge's mistake to their own advantage.

■ Thus *Noia* apparently does survive *Sykes*, though not quite in the way the district court suggests. It is not that *Noia* allows us to go beyond state court determination of default; *Sykes* does that too. It is rather that *Noia* enables us to look beyond the state procedural rules themselves. For *Noia* premised its exception to federal jurisdiction on equitable considerations underlying the Great Writ of habeas, relying on the broad principle that "a suitor's con-

duct in relation to the matter at hand may disentitle him to the relief he seeks." 372 U.S. at 438, 83 S.Ct. at 848. The discretion it grants is not limited to denials for deliberate by-pass of state procedure; that is but one example of the sort of strategic conduct that may disentitle a petitioner to his relief. *Sykes*, on the other hand, will not come into play with its cause and prejudice standard unless some procedural requirement has been by-passed, cutting off state remedies; in particular *Sykes* has no application to this case. But the deliberate by-pass standard of *Noia*, relying on general equitable principles, does not require the by-pass of a requirement; the passing by of a mere opportunity may be enough, and in this case is enough, to call that standard into play.[3]

## IV.

■ Here, the prisoner forwent, with the advice of counsel, "the privilege of seeking to vindicate his federal claim[ ] in state court." *Noia*, 372 U.S. at 439, 83 S.Ct. at 849. Brownstein and his lawyers had decided for a bench trial. When it became apparent that the judge was not going to inform him of his option to take a jury trial, Brownstein or his lawyers could have requested one, had they chosen. Brownstein had faced a similar situation several months earlier; on that occasion, after being informed by the judge of his options Brownstein had opted for a bench trial. As the district court said:

> Had the state appellate court recognized that there was in fact no express waiver in open court, it would very probably have sent the case back for a new trial without regard to the defendant's state of mind. The result we reach does not depend on what the state court would do; rather, as the district judge said, it arises out of the notion of the orderliness that a federal court may impose when called upon to grant habeas. The writ was intended to set free those illegally detained, and it occupies a place of special importance in our legal system. Particularly at a time when the federal caseload may work to deprive deserving prisoners of access to federal court, it would be wrong to allow Brownstein—however engaging his apparent lack of guile before the district court—to misuse the writ by employing it in this unworthy cause.

procedural default could not be determined by looking at compliance with clear rules of procedure; one of the reasons why lack of compliance with procedural rules is judged so harshly is that procedural rules are ordinarily not difficult to understand. A rule of procedure that depended on the state of mind of the litigant would be a procedural monstrosity. In any case, federal courts have used the term as we are using it. *See Maxwell v. Sumner,* 673 F.2d 1031, 1033–34 (9th Cir.1982) (failure to raise issue, when not required by state procedure, is not procedural default; habeas available without further inquiry into deliberateness).

**3.** We stress that the circumstances of this case are highly unusual. The federal court has been obliged to consider behavior the state court did not elect to consider. Having considered it, we find that no state rule seems to proscribe it.

If Abrams [Brownstein's counsel] had ... objected to the failure to offer a jury trial, Judge Close no doubt would promptly have given Brownstein the same speech he had given him a few months before. Brownstein and his counsel would then have had a brief opportunity to discuss their preferred course of action once again, but the consequences would have been precisely the same. Whatever factors led them to choose a bench trial originally (say the favorable verdict Brownstein obtained from Judge Close a few months earlier) were still present and led to their sticking with that decision. Had it been otherwise, Brownstein and his lawyers— both fully aware of the right to a jury trial, as Brownstein's own forthright testimony confirms—would have opted to go that route instead. Thus nothing at all could have been gained by pointing out Judge Close's oversight to him. On the other side of the ledger, *counsel's remaining silent gave them a double chance:* they could wait for Judge Close's verdict and pursue their objection at that time if Judge Close found Brownstein guilty. Thus the decision not to object can only be described as a tactical one stemming from competent (though not necessarily forthright) representation.

594 F.Supp. at 499 (emphasis added). Thus the case is unlike *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), in which the Court affirmed the grant of a habeas writ in spite of the fact that the petitioner had pleaded guilty after the state denied his motion to suppress. Although at the time most states regarded a guilty plea as cutting off the right to review of the decision to admit evidence— so that the federal writ, under a rule announced in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970),

would also be denied—New York did not. Thus Newsome, in spite of having pleaded guilty, was entitled to raise on appeal the constitutional problems associated with the evidence he had tried to suppress.

Since the state courts did not, under state law, refuse to review the issue, the Court found no ground for denying federal relief:

In *Fay v. Noia,* ..., the Court held that a federal habeas judge may deny relief to an applicant who has deliberately bypassed the orderly state-court procedures for reviewing his constitutional claim. 372 U.S. at 438 [83 S.Ct. at 848]. But the Court also held that if the state courts have entertained the federal constitutional claims on the merits in a subsequent proceeding, notwithstanding the deliberate bypass, the federal courts have no discretion to deny the applicant habeas relief to which he is otherwise entitled. *Id.* at 439 [83 S.Ct. at 849]. It would seem to follow necessarily that when there is no bypass of state appellate procedures, deliberate or otherwise, and the state courts entertained the federal claim on the merits, a federal habeas court must also determine the merits of the applicant's claim.

420 U.S. at 292 n. 9, 95 S.Ct. at 891 n. 9. The holding of *Lefkowitz* is essentially that the federal courts cannot declare a procedural default where the states have not.

But in *Lefkowitz* the petitioner asked only for review that he was entitled to under state law. No doubt it was a strategic choice to plead guilty rather than go to trial; Newsome probably expected a lighter sentence because of so pleading. But he was entitled to expect the benefits of both the reduced sentence and the reservation of his right to appeal on the admissibility of the evidence; the state reserved that right to him. His strategy involved nothing he was not entitled to under state law.

Brownstein was entitled to a jury trial; but he knew that he was, and he could have asked for it. Instead he deliberately chose

to have two chances at acquittal, and that was something he was not entitled to. The district court found that (a) Brownstein forewent a timely objection on the advice of competent counsel, and (b) foregoing the objection was intended to secure him some benefit. The same was true in *Lefkowitz:* Newsome could have preserved his objection by going to trial and objecting to the admission of evidence at trial; in many states that would have been the only way he could have preserved his objection. He did not choose to go that way because he wanted to secure a certain benefit—a lighter sentence. But in New York objection at trial was not the only way of preserving the objection; and since under state law Newsome could pass up that way of objecting, and do it in order to obtain the benefit, without losing the right to appeal, he did not thereby forfeit his right to federal habeas review.

 The difference here is that the benefit Brownstein intended to secure was one he was not entitled to. To have denied Newsome habeas review would have defeated the point of the New York law; prisoners wanting to preserve the possibility not only of state review but also of federal review would be required to go to trial in any case. We know of no such state policy that would be defeated here. Although he did everything state procedural rules required, Brownstein did not do everything he could have; and the reason he did not was a strategic one: he wanted the chance of another trial, if he lost the first time. In these circumstances we need not reach the issue whether he waived his right to a jury trial knowingly and understandingly.[4] We hold that he is not entitled to federal relief. The ruling of the district court is affirmed.

**4.** Were we obliged to reach the merits, it is likely we would have to find that Brownstein has waived his right to a jury trial. Although interrogation by the judge on the choice between a jury trial and a bench trial is the preferred procedure, it is not constitutionally required. *Estrada v. United States,* 457 F.2d 255 (7th Cir.1972). In a collateral proceeding, evidence of a valid waiver may be found either in

the record or independently. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). On knowing and intelligent waiver of constitutional rights, *see Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *United States ex rel. Williams v. DeRobertis,* 715 F.2d 1174, 1189 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984).