

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-2-1994

# Reynolds v. Elingsworth, et al.

Precedential or Non-Precedential:

Docket 93-7106

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Reynolds v. Elingsworth, et al." (1994). *1994 Decisions.* Paper 1.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/1

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 93-7106


GEORGE L. REYNOLDS,

Appellant

v.

JACK C. ELLINGSWORTH, Warden;
CHARLES M. OBERLY, III


On Appeal From the United States District Court
For the District of Delaware
(D.C. Civil Action No. 86-00142)


Argued November 3, 1993

BEFORE: SLOVITER, Chief Judge, and STAPLETON,
Circuit Judges, and RESTANI,* Judge,
United States Court of International
Trade

(Opinion Filed May 2, 1994)


1

* Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

Beverly L. Bove (Argued)
Tomar, Porks, Seliger, Simonoff &
Adourian
Suite 1701 Mellon Bank Center
919 Market Street
P.O. Box 955
Wilmington, DE  19801

         Attorneys for Appellant

Loren C. Meyers (Argued)
Deputy Attorney General
Department of Justice
State Office Building
820 French Street
Wilmington, DE  19801

         Attorney for Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal requires us to consider the situation of a criminal defendant whose lawyers make a tactical decision not to raise federal due process objections in the defendant's state trial or on state direct appeal, and do so under circumstances in which they could have a good faith expectation that the defendant would be able to raise these federal objections in state collateral review proceedings.  The issue we address is whether the rule of Fay v. Noia, 372 U.S. 391 (1963), bars such a defendant from later raising his federal objections in federal

court through a petition for writ of habeas corpus.  We hold that it does not.

**I.**

In 1976, George Lee Reynolds was tried for felony murder, conspiracy, and robbery in the Superior Court of the State of Delaware. His alleged role in the crimes was to drive his two codefendants to and from the scene of the murder and robbery. The prosecuting Deputy Attorney General, in his opening statement to the jury, referred extensively to two purported confessions Reynolds had made to the police. Later in the trial, when the prosecution sought to introduce Reynolds' confessions into evidence, a hearing was held to determine their admissibility. At the hearing, the prosecution withdrew its proffer of the confessions. The prosecution never renewed its proffer,[0] and the evidence it did present turned out to be weak.[0] After the prosecution withdrew its proffer of Reynolds' confessions, Reynolds' counsel did not request a curative jury instruction regarding the Deputy Attorney General's opening statement, nor did Reynolds' counsel ask that a mistrial be declared. Reynolds was convicted and sentenced to life in prison.

---

[0] In the separate trial of one of Reynolds' codefendants, the Delaware judge excluded Reynolds' confessions as unreliable because the police had induced them by making promises of freedom and a monetary reward to Reynolds that were "extravagant in the extreme." State of Delaware v. Rooks, 411 A.2d 316, 316 (Del. 1980); see also, State v. Rooks, 401 A.2d 943 (Del. 1979). After excluding Reynolds' confessions, the judge directed a verdict of acquittal for Reynolds' codefendant.

[0] See, e.g., Reynolds v. Ellingsworth, 843 F.2d 712, 716 n.10 (3d Cir. 1988), cert. denied, 488 U.S. 960 (1988) ("Reynolds I") (state's case was "weak").

Following a direct appeal to the Delaware Supreme
Court, a remand by the supreme court to the trial court for
further hearings in light of newly discovered evidence (at which
hearings the chief investigating police officer appeared as a
defense witness), and a second direct appeal to the supreme
court, the supreme court affirmed Reynolds' conviction.  Reynolds
v. State, 424 A.2d 6 (Del. 1980).  In none of these proceedings
did Reynolds' counsel complain that Reynolds' federal rights had
been violated at trial.

Reynolds then sought state collateral review of his
conviction pursuant to Delaware Superior Court Criminal Rule 35.[0]
In that proceeding, he complained for the first time that the
prosecutor's references to the confessions during his opening
statement, coupled with the trial judge's failure to give a
limiting jury instruction or to declare a mistrial sua sponte,
denied Reynolds the due process required by the federal
Constitution.

In the Rule 35 proceedings, the Delaware Superior Court
held hearings to determine why Reynolds' lawyers had not raised
his federal claims either at trial or on direct appeal. Reynolds'
two trial lawyers, one of whom also represented Reynolds on
direct appeal, testified at the hearings.  Both said they had no

---

[0]Delaware Superior Court Criminal Rule 35(a) provides:

> (a) Correction of Sentence.  The court
> may correct an illegal sentence at any time
> and may correct a sentence imposed in an
> illegal manner within the time provided
> herein for the reduction of sentence.

recollection, independent of the transcript they were supplied, that the Deputy Attorney General had mentioned Reynolds' confessions to the jury. Moreover, both testified that they did not remember why they had not requested a limiting instruction, moved for a mistrial, or complained on direct appeal about the prosecutor's statements. Each counsel did offer hypothetical explanations, based largely upon his usual practices and his review of the record, as to why, for tactical reasons, he might have conducted Reynolds' trial and/or direct appeal as he did.

Reynolds' lead trial lawyer, an experienced criminal defense attorney who made most of the tactical trial decisions, offered three reconstructive hypotheses as to why he might not have moved for a mistrial. The first hypothesis was that he did not want a mistrial because it would give the prosecution a second opportunity to proffer the confessions after having marshalled stronger evidence to support their admissibility. The second was that a motion for a mistrial might have prompted the prosecutor to ask for a recess and rethink his decision to withdraw the confessions. The third hypothesis was that defense counsel simply overlooked the issue -- in his words, "I didn't catch it," or "I blew it." Appendix at 368 and 364. When asked which hypothesis he "placed the most reliance on," Reynolds' lead trial counsel answered, "Intellectually, the first. Emotionally, the third." Appendix at 368. While denying any recollection on the subject, lead counsel also hypothesized that he did not ask for any cautionary instruction because it would serve primarily to refocus the jury's attention on the confessions.

7

The defense counsel who handled the direct appeal gave the following testimony as to why the matter of the confessions had not been raised on appeal:

> The reason it was not raised on appeal was because, as far as I am concerned, the better grounds for appeal were the interpretation of the stipulation regarding the truth serum and also the very good ground of the newly-discovered evidence when we had the investigating officer saying he believed the wrong man had been convicted.

Appendix at 382.

The superior court analyzed the testimony of Reynolds' counsel to ascertain whether Reynolds had shown "cause" for his failure to raise his due process claims at trial or on direct appeal. The superior court performed this analysis because it interpreted the Delaware Supreme Court's opinion in Conyers v. State, 422 A.2d 345 (Del. 1980), to impose a contemporaneous-objection requirement for preserving Rule 35 review, and to adopt the United States Supreme Court's Wainwright v. Sykes "cause and prejudice" test as the Delaware standard for deciding whether to impose a procedural bar for failure to comply with the contemporaneous-objection requirement. State v. Reynolds, Nos. 76-04-0026; 0027; 0027A, letter op. at 2-3 (Del. Super. Ct. Dec. 9, 1983). In Sykes, 433 U.S. 72 (1977), the United States Supreme Court held that a state criminal defendant forfeits the availability of federal habeas review if his lawyer fails to raise his federal claim at the time or in the manner specified by "independent and adequate" state procedural requirements unless

8

the defendant can show "cause" for his counsel's state default and "prejudice" resulting from it.

The superior court held that Reynolds had failed to show "cause" for his trial and appellate lawyers' silence regarding his federal due process claims, and therefore ruled that Conyers barred Reynolds from raising the claims in state collateral review proceedings. State v. Reynolds, Nos. 76-04-0026; 0027; 0027A, letter op. at 7 (Del. Super. Ct. Dec. 9, 1983). The Delaware Supreme Court upheld the superior court's decision. Reynolds v. State, No. 370 1983, letter op. (Del. Jan. 16, 1985).

Reynolds filed pro se a second Rule 35 motion raising federal constitutional claims of ineffective assistance of counsel. The superior court denied Reynolds' second Rule 35 motion as repetitive. State v. Reynolds, No. IS76-04-0026, 0027, letter op. at 2 (Del. Super. Ct. Mar. 12, 1986). Reynolds did not appeal. Reynolds I, 843 F.2d at 723.

Reynolds later filed a pro se petition for a writ of habeas corpus in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 2254. His petition raised both unfair trial and ineffective assistance of counsel claims. The unfair trial claims were based on the prosecutor's reference to Reynolds' confessions and the failure of the trial judge sua sponte to instruct the jury to disregard that reference. The district court referred the case to a magistrate judge who recommended that Reynolds' unfair trial claims be barred from habeas review under the "cause and prejudice" or

9

"independent and adequate state ground" test of <u>Wainwright v.
Sykes</u>, <u>supra</u>.  The magistrate judge recommended that Reynolds'
ineffective assistance claims be rejected on their merits.  The
district court adopted the magistrate's recommendations, and
denied Reynolds' habeas petition.  <u>Reynolds I</u>, 843 F.2d at 716.

Reynolds appealed the district court's dismissal of his
habeas petition.  We reversed the district court's ruling that
Reynolds' unfair trial claims were procedurally barred.  The
Delaware courts' determination that Reynolds had forfeited his
opportunity for Rule 35 review, we concluded, was not based on an
independent and adequate state procedural ground of default as
required by <u>Sykes</u>.  <u>Reynolds I</u>, 843 F.2d at 719.  Essentially, we
found that the Delaware courts had subjected Reynolds to a new
contemporaneous-objection requirement when they reviewed his Rule
35 motion, a requirement which had not existed at the time
Reynolds could have contemporaneously objected.[0]  While the

---

[0]<u>See</u> <u>Reynolds I</u>, 843 F.2d at 719:

> To decide whether <u>Conyers</u> provides an
> "independent and adequate" basis for
> precluding federal habeas review of
> Reynolds's claims, we turn to the three
> factors upon which the Supreme Court relied
> to so decide in <u>Sykes</u>, to wit: whether the
> state procedural requirement is stated in
> "unmistakable terms," whether the state
> courts have refused to review the claims on
> the merits, and whether the state courts'
> refusal in this instance is "consistent" with
> other state decisions.  <u>Id.</u> at 85-86, 97 S.
> Ct. at 2505-06.
>
> Notwithstanding the Delaware courts'
> refusal to consider the merits of Reynolds's
> claims, we find that the <u>Conyers</u> decision

10

Delaware courts might be free to impose a surprise forfeiture rule to preclude state collateral review of a state trial's compliance with federal law, we held that state forfeiture-by-surprise was an inadequate ground for precluding federal collateral review.  We also found that Reynolds had not exhausted his available state remedies regarding his ineffective assistance claims.  Accordingly, we reversed the district court's disposition of both Reynolds' unfair trial claims and his ineffective assistance claims.  We remanded for further proceedings consistent with our opinion.  In our opinion, we noted that, if Reynolds chose to amend his petition to drop his unexhausted ineffective assistance claims, the district court

> does not constitute an "independent and adequate state procedural ground" barring federal courts from habeas review of the due process claim raised here.  No specific Delaware procedural rule governs, in "unmistakable terms," Sykes, 433 U.S. at 85, 97 S. Ct. at 2505, the precise claim raised in Reynolds's Rule 35 motion, namely, that due process was denied by the prosecutor's over-reaching coupled with the absence of the judge's sua sponte limiting instruction or declaration of mistrial.  In addition, the Delaware courts' invocation of Conyers is not consistent with other state authority.  Thus, of the three elements that could support a conclusion that this state procedural requirement is "adequate" to preclude federal review, two are blatantly missing here.

See also id. at 720 ("Whether enunciated by court rule or case law, there is no Delaware procedural rule on point, and therefore Reynolds violated none."); id. at 722 ("Even if we were to conclude that a new Delaware procedural rule was created by Conyers, we could not also conclude that the rule barred collateral federal review, where it was applied to claims [like Reynolds' claims] for the first time in the instant case.").

11

"could then proceed to the merits" of Reynolds' unfair trial claims. Reynolds I, 843 F.2d at 724 n.22.

On remand, Reynolds dropped his ineffective assistance claims, and the district court once again referred his unfair trial claims to a magistrate judge. This time the magistrate judge considered the merits of Reynolds' unfair trial claims, and recommended that the claims be dismissed. Reynolds v. Ellingsworth, No. 86-142-JRR, 1992 WL 404453, at *6 (D. Del. Dec. 31, 1992). The district court, however, decided once again that it was barred from considering the merits of Reynolds' unfair trial claims. This time the district court ruled that Reynolds' habeas petition was barred under the "deliberate bypass" rule of Fay v. Noia, 372 U.S. 391 (1962), a rule we had no occasion to address directly in Reynolds I.

The district court interpreted Fay to require that Reynolds' federal due process claims be barred from federal habeas review if, for strategic reasons, Reynolds' counsel deliberately bypassed the opportunity to object at trial and on appeal to the Deputy Attorney General's opening statements and the trial court's failure to give a curative instruction. Applying 28 U.S.C. § 2254(d), the district court ruled that it was bound by what it characterized as the Delaware Superior Court's "factual determination that Reynolds' counsel intentionally decided not to object or move for a mistrial." Reynolds v. Ellingsworth, No. 86-142-JRR, 1992 WL 404453, at *8 (D. Del. Dec. 31, 1992). Therefore, the district court held, "because of his counsel's intentional decision to forgo objection

12

to the prosecution's opening statement, Reynolds is precluded from mounting a due process challenge to the effect of the statement upon the fairness of his trial."  Id. at *9.

Reynolds now appeals the district court's second refusal to consider the merits of his due process claims.

## II.

Our legal analysis is premised on two threshold assumptions, one legal and the other factual.  First, we assume that Fay v. Noia has survived Sykes, supra, and Coleman v. Thompson, 111 S. Ct. 2546 (1991).  Second, we assume that Reynolds' counsel made strategic decisions not to move for a mistrial or ask for a curative instruction.

There is substantial support for the view that the "independent and adequate state law ground" rule, as applied in cases like Sykes, Murray v. Carrier, 477 U.S. 478 (1986), and Coleman v. Thompson, 111 S. Ct. 2546 (1991), has subsumed the "deliberate bypass" rule of Fay.[0]  If Fay is currently without

---

[0]In creating and applying the "cause and prejudice" standard in Sykes and Carrier, the Supreme Court "limited Fay to its facts." Coleman, 111 S. Ct. at 2563, 2564.  In Coleman, the Supreme Court went further, stating:

> In Harris [v. Reed, 489 U.S. 255 (1989)], we described in broad terms the application of the cause and prejudice standard, hinting strongly that Fay had been superseded . . . .
>
> We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural

13

independent significance, of course, the judgment of the district court cannot be upheld in light of our holding in Reynolds I. Since we conclude that Reynolds' petition would merit review under Fay as well as Sykes, and that a reversal is required even if Fay retains independent vitality, we will assume arguendo that the district court properly looked to Fay as a relevant precedent.

With respect to the factual predicate for our decision, we note, again, that the purpose of the evidentiary hearing in the superior court in the first Rule 35 proceeding was to determine whether Reynolds could show "cause" and "prejudice" under Conyers and Sykes. Reynolds maintained in that proceeding that the ineffective assistance of his counsel with respect to the confession references provided "cause" under Conyers and

> rule, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Fay was based on a conception of federal/state relations that undervalued the importance of state procedural rules.
>
> * * *
>
> . . . By applying the cause and prejudice standard uniformly to all independent and adequate state procedural defaults, we eliminate the irrational distinction between Fay and the rule of cases like Francis[v. Henderson, 425 U.S. 536 (1976)], Sykes, Engle[v. Isaac, 456 U.S. 107 (1982)], and Carrier.

111 S. Ct. at 2564-65.

14

Sykes to excuse his failure to make a contemporaneous objection. The superior court held that Reynolds had not satisfied his burden of proof on the cause issue and characterized the record as reflecting a situation like that involved in Engle v. Isaac, 456 U.S. 107 (1982), a case in which the Supreme Court held that neither a deliberate strategic decision nor an inadvertent failure of counsel to raise an issue constitute "cause" unless counsel's performance has failed to meet the Sixth Amendment standard for competent assistance, 456 U.S. at 133-34; see also Murray v. Carrier, 477 U.S. at 485-87. The superior court cast its holding as follows:

> Defendant contends that the reason for the failure of his attorneys to raise the issue at trial or at the appeal stage was either inadvertence or lack of knowledge of the applicable law. I do not find that those contentions have been proved by this record.
>
> 4. Considering the experience and competence of defendant's attorneys and the quality of the defense made in this case, I find that the situation here falls squarely within the language of Engle that "[c]ounsel might have overlooked or chosen to admit [omit] respondents' due process argument while pursuing other avenues of defense". Under the reasoning of Engle the situation existing here does not constitute cause justifying relief from the failure to make timely objection.

State v. Reynolds, Nos. 76-04-0026; 0027; 0027A, letter op. at 6-7 (Del. Super. Ct. Dec. 9, 1983).

In the course of his opinion, the superior court judge also described the testimony of defense counsel that we have

15

summarized above. That description included the following observations:

> It is clear from the testimony of the defendant's attorneys that they viewed the announcement of the Deputy Attorney General that he would not seek to introduce the confession in evidence as a substantial victory and that they desired to push forward to conclude the trial because they then anticipated a verdict in defendant's favor. Defendant's lead trial counsel testified that he did not seek an admonition from the Court for the jury to disregard the Deputy Attorney General's prior reference to the confession because it would only focus attention on the prior references. With reference to his not seeking a mistrial, he testified that he had had no recollection of his mental processes. However, he testified, based upon his experience, that after two or three days of trial a jury forgets what was said in an opening statement. . . . Defendant's other attorney . . . testified that . . . he felt that raising [the prosecutor's reference to the confessions] would detract from the more meritorious arguments which were the thrust of the appeal.

State v. Reynolds, Nos. 76-04-0026; 0027; 0027A, letter op. at 5-6 (Del. Super. Ct. Dec. 9, 1983).

Both the Supreme Court of Delaware and the district court read the superior court's opinion as finding that Reynolds' counsel made deliberate strategic decisions not to ask for a jury instruction or a mistrial. The district court regarded this factual finding as supported by the evidence and therefore binding upon it under 28 U.S.C. § 2254(d).

We have no difficulty in concluding that the evidence before the superior court would have supported a factual finding that strategic decisions were made. That hypothesis would seem

16

to be the most reasonable one given the general quality of counsel's trial performance and the fact that it would appear to have been in Reynolds' best interest not to seek a mistrial. In that way, he could see what the jury would do with the state's weak evidence and, if he was convicted, the then existing Delaware law did not appear to foreclose him from raising his due process objections later. If counsel deliberately chose this course, it would clearly have been permissible trial strategy not to resurrect the state's opening by asking for a curative instruction.

While we are thus confident that the evidence before the Superior Court would support a factual finding of strategic decision making, we are less confident about the district court's holding that it was required by 28 U.S.C. § 2254(d) to presume that such decision making occurred. Before the presumption provided in Section 2254(d) arises, it must appear that "the merits of the factual dispute [in the district court] were resolved in the State Court hearing." 28 U.S.C. § 2254(d)(1). While the issue found crucial by the district court was whether deliberate strategic decisions were made, the holding of the superior court was that Reynolds' counsel either overlooked the issue or made a strategic decision, neither of which would constitute cause under Conyers and Sykes. While we acknowledge that there is language in the superior court's opinion from which it can be inferred that it believed strategic decisions were made, the superior court's statement of its ultimate conclusion

17

and its focus on the Conyers cause issue make the district court's approach to the Fay v. Noia issue problematic.

Nevertheless, we will assume, consistent with the district court's approach, that Reynolds' counsel made strategic decisions not to request a mistrial and not to ask for a curative instruction. We do so because our present task -- reviewing the district court's refusal to reach the merits of Reynolds' due process arguments -- does not require us to determine whether or not such decisions were made.[0] We may assume arguendo that strategic decisions were made because the district court's refusal was inappropriate even if strategic decisions were made.

While we thus accept that Reynolds' counsel made strategic decisions not to move for a mistrial and not to ask for an instruction, we emphasize before proceeding with our legal analysis that neither the superior court nor any other court has found that Reynolds' counsel made a strategic decision to forego state process in order to seek federal habeas corpus relief. Nor is there any reason to infer such an intent. As we pointed out in Reynolds I, Reynolds' counsel at the time of trial had no reason to anticipate that the failure to ask for a mistrial or a jury instruction (or even the failure to raise the confession issue on direct appeal) would bar consideration of Reynolds' due

---

[0]Because the district court on remand will be required to reach the merits of Reynolds' unfair trial due process claims, and because Reynolds has withdrawn his constitutionally ineffective assistance claims, we do not foresee that the district court will again be required to decide whether the superior court "resolved" the "strategic decision" issue within the meaning of § 2254(d)(1) and we express no opinion on that issue.

18

process claims in a state post-conviction relief proceeding under Rule 35.

## III.

In Fay v. Noia, Noia, the petitioner, claimed that he had been convicted on the basis of a coerced confession in violation of the Fifth and Fourteenth Amendments. He had not appealed his conviction, however, and he was subsequently denied state post-conviction relief because of this failure to appeal. The Supreme Court held that he was entitled to federal habeas review of his contention that he was being confined in violation of the federal Constitution.

The Court in Fay viewed its task as determining "the proper accommodation of [the] great constitutional privilege [of habeas review] and the requirements of the federal system." 372 U.S. at 426. It reaffirmed the power of a federal habeas court to grant relief from unconstitutional state confinement where state courts have rejected or refused to consider the petitioner's constitutional argument. The limitations which it recognized on the appropriate exercise of that power were grounded in federalism and the necessity of comity between the federal and state court systems.

The Court noted the exhaustion doctrine codified in 28 U.S.C. § 2254, observing that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Id. at 419-20, quoting from Darr v. Burford, 339 U.S. 200, 204 (1950). The Fay court

19

held, however, that the exhaustion doctrine of § 2254 barred federal review only when there were state remedies still available to the petitioner at the time of his petition. 372 U.S. at 434-35.

The Fay court also held that the "independent and adequate state ground" doctrine that barred direct review by the Supreme Court of state judgments having a basis in state law should not be applied to bar habeas review in federal district courts. Thus, the fact that a habeas petitioner had violated a state procedural rule and was thereby barred from further state review of a federal constitutional issue did not alone foreclose federal habeas relief. 372 U.S. at 428-34.

The Fay court nevertheless did recognize that there were situations not covered by the exhaustion doctrine in which the "exigencies of federalism" counselled against federal habeas review:

> [T]he exigencies of federalism warrant a limitation whereby the federal judge has discretion to deny relief to one who has deliberately sought to subvert or evade the orderly adjudication of his federal defenses in the state courts.

> * * *

> We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has <u>deliberately bypassed the orderly procedures of the state court and in doing so has forfeited his state remedies.</u>

372 U.S. at 433, 438 (emphasis supplied).

The Fay court's conclusion with regard to the "independent and adequate state ground" doctrine was subsequently

20

abandoned in <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), because it was "based on a conception of federal/state relations that undervalues the importance of state procedural rules." <u>Coleman v. Thompson</u>, 111 S. Ct. 2546, 2565 (1991). Where state review of a federal claim is barred because of a habeas petitioner's noncompliance with a state procedural requirement, comity counsels that the independent and adequate state ground doctrine be applied to bar collateral access to the federal courts in the absence of a showing of "cause and prejudice."

> Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. . . . The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

<u>Coleman</u>, 111 S. Ct. at 2555.

With this background, we turn to the "deliberate bypass" doctrine articulated in <u>Fay</u>. It is this doctrine that was applied by the district court to bar Reynolds' access to the federal courts after we had determined that such access was not barred by the independent and adequate state ground doctrine. The important point for present purposes is that, like the doctrines of exhaustion and independent and adequate state ground, the deliberate bypass doctrine finds its justification in comity concerns. A petitioner should not be able to secure federal relief if he has deliberately deprived the state judicial system of an opportunity to correct the alleged constitutional error.

21

As articulated by the Supreme Court in Fay, the deliberate bypass doctrine is a waiver doctrine. "The classic definition of waiver . . . -- 'an intentional relinquishment or abandonment of a known right or privilege' -- furnishes the controlling standard." 372 U.S. at 439. The doctrine applied only when the "habeas applicant . . . understandingly and knowingly forewent the privilege of seeking vindication of his federal claims in the state courts." Id.

Fay's rationale for the deliberate bypass doctrine is inapplicable to the facts of this case. Reynolds did not understandingly and knowingly forego the privilege of seeking to vindicate his federal claims in the Delaware courts, nor have his counsel been found to have made a decision to bypass state process for federal. Accordingly, he cannot be said to have deprived the Delaware courts of the opportunity to pass on his constitutional contention. On the contrary, Reynolds tried to raise his federal claims in Delaware Superior Court and in the Delaware Supreme Court pursuant to Delaware's collateral review procedures. If his trial and appellate counsel made a strategic decision to bypass state trial and appellate procedures, it was on the basis of a state legal landscape in which they could go forward in the hope of an acquittal by the jury and raise the due process argument in a Rule 35 proceeding.

Because Reynolds' counsel could not have anticipated that their failure to raise the federal due process claims at trial and on direct review would prevent Reynolds from raising the claims in state collateral review proceedings, they could not

22

have deliberately forfeited Reynolds' chance at state review of his federal claims.  And, "if neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim."  County Court v. Allen, 442 U.S. at 154.

The most helpful Supreme Court precedent in this context is Lefkowitz v. Newsome, 420 U.S. 283 (1975).  Newsome, the petitioner there, pleaded guilty in a New York state court to possessing heroin.  He subsequently sought federal habeas review of the constitutionality of the search of his person that disclosed the heroin.  The respondent argued that, as a matter of federal habeas corpus law, a defendant who pleads guilty to an offense in a state court waives his right to federal habeas corpus review of any constitutional issues other than those involving the plea itself.  The Supreme Court recognized that this was the general rule and explained the rule by reference to the deliberate bypass doctrine of Fay:

> A defendant who chooses to plead guilty
> rather than go to trial in effect
> deliberately refuses to present his federal
> claims to the state court in the first
> instance.  McMann v. Richardson, supra, at
> 768.  Once the defendant chooses to bypass
> the orderly procedure for litigating his
> constitutional claims in order to take the
> benefits, if any, of a plea of guilty, the
> State acquires a legitimate expectation of
> finality in the conviction thereby obtained.
> Cf. Fay v. Noia, 372 U.S. 391, 438.

The Supreme Court refused to apply the deliberate bypass rule in Newsome's case, however, because New York law

23

allowed a defendant to plead guilty and ascertain what sentence he would receive and thereafter pursue all of his constitutional claims in the state appellate process. The Supreme Court held that, where a state voluntarily chooses not to give a conviction based on a guilty plea the normal preclusive effect in its own courts, there is no federal justification for denying federal habeas review of federal constitutional issues.[0] So long as the petitioner has complied with the procedure required by state law,

---

[0] In the name of federalism, the dissent insists that concern for a "State's interest in the finality of its criminal judgments" (Dis. typescript op. at 6) justifies a federal rule precluding federal habeas review even in the absence of a state procedural default. Lefkowitz, as we read it, teaches that federalism requires federal courts to permit a state to determine how "final" its own judgments will be. New York had there decided that a New York criminal judgment based on a guilty plea would not preclude a subsequent challenge in the New York courts on constitutional grounds. The respondent urged a federal rule that would give greater finality to New York criminal judgments in federal habeas courts than New York had chosen to give its criminal judgments in its own courts. The Supreme Court rejected this suggestion, holding that judgments based on guilty pleas should be given the same degree of finality in federal habeas courts as the state entering the judgment would give it.

Because all human institutions are fallible, no judicial system of which we are aware has chosen to insist on absolute finality. Each judicial system strikes a balance between the stability concerns served by judgments that preclude further proceedings and the justice concerns served by rules permitting alleged injustices to be reviewed after judgment is entered. A state's position with respect to the necessity for contemporaneous objections necessarily reflects its judgment about how these conflicting concerns should be reconciled. The creation of a federal contemporary objection rule in this case, as urged by the dissent, would give Reynolds' criminal judgment greater finality in a federal habeas court than Delaware had chosen to give its judgments in its own courts at the time of Reynolds' trial. We believe this would be inconsistent with the federalism concerns of Fay and Lefkowitz.

his deliberate decision to avail himself of the benefits of pleading guilty should not bar federal review.

The Supreme Court stressed in Lefkowitz that applying the respondent's rule "would make New York's law a trap for the unwary" because defendants could understandably believe they had the option of availing themselves of the benefits of a guilty plea while preserving their right to appellate review of their constitutional issues and might only later discover that they had inadvertently waived their right to federal habeas review.

We read Lefkowitz to hold that Fay's deliberate bypass doctrine is based on comity and that it does not bar federal habeas review in the absence of a procedural default under state law. Lefkowitz's teaching for this case seems clear to us. Just as New York law afforded state appellate review despite a guilty plea, Delaware law afforded state habeas review despite the absence of a contemporary objection. Since Reynolds, like Newsome, complied with the procedural requirements of the courts of his state and provided them with an opportunity to pass on his constitutional claim, he, like Newsome, cannot be said to have engaged in a deliberate bypass of state process. To hold otherwise would fashion from Delaware law no less of a "trap for the unwary" than a contrary result in Lefkowitz would have fashioned from New York law.[0]

---

[0]Four years after Lefkowitz, in County Court of Ulster County v. Allen, 442 U.S. 140 (1979), the Supreme Court considered the case of three habeas petitioners who complained that they had been convicted of firearms possession in state court on the basis of an unconstitutional state evidentiary presumption. Only after they had been convicted did the petitioners raise the federal

25

We believe <u>Lefkowitz's</u> reading of <u>Fay</u> is inconsistent with the interpretation which the Court of Appeals for the Seventh Circuit has given to the deliberate bypass doctrine. In <u>Brownstein v. Director of Illinois Dep't of Corrections</u>, 760 F.2d

issue in state court. In the ensuing federal habeas proceeding, the respondent argued that review was precluded by the deliberate bypass doctrine. <u>Id.</u> at 146. The Supreme Court ruled that the petitioners were entitled to federal habeas recourse because the state had never adopted a clearly applicable contemporaneous-objection policy. <u>Id.</u> at 150. The Court expressed no concern that the petitioners' failure to raise their federal objection until after the jury's verdict was announced might actually have been a "deliberate" or "strategic" decision by the petitioners. It saw comity as the sole relevant issue and rejected the respondent's position because "if neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." <u>Id.</u> at 154.

In <u>Lefkowitz</u> and <u>Ulster County</u>, state appellate courts had addressed the petitioners' federal claims on their merits. This does not distinguish <u>Lefkowitz</u> and <u>Ulster County</u> from this case, however. Under the federal habeas law we applied in <u>Reynolds I</u>, where a respondent urges that there has been a procedural default, the claim must be treated as one involving no procedural default if, <u>inter alia</u>, (1) the state procedural requirement has not been enunciated in "unmistakable terms," (2) the state courts have not insisted on that requirement in petitioner's case and have reached the merits, or (3) the state courts have insisted on the requirements in petitioner's case but in doing so have acted in a manner inconsistent with other state cases. See footnote 4, <u>supra</u>. In cases where there has been no procedural default, or any alleged default that may have occurred does not meet these three criteria, there is no independent and adequate state law ground for the judgment. The absence of an independent and adequate state law ground in Reynolds' case is precisely the reason we permitted his habeas petition to go forward in <u>Reynolds I</u>, and it is what makes his situation equivalent to that of the petitioners in <u>Lefkowitz</u> and <u>Ulster County</u>.

836 (7th Cir. 1985), cert. denied, 474 U.S. 858 (1985), the court held that federal habeas review is barred, even in the absence of a procedural default by the petitioner under state law, where the petitioner engaged in "strategic behavior" in the state court. Id. at 841. In that case, the state trial judge had neglected to secure an express waiver of the petitioner's right to a jury trial prior to the petitioner's bench trial. The petitioner candidly admitted during his federal habeas hearing that he was aware during his trial both of his right to a jury and of the fact that his trial judge was committing reversible error by failing to secure an express waiver. He did not object, however, because his counsel believed he could "use the judge's omission to secure a new trial, should he lose the first time around." Id. at 839. Under Illinois law, no objection was required to preserve this specific issue, and a new trial was mandated even if no prejudice was shown.

The Brownstein court began by quoting Fay's holding: "The federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in doing so has forfeited his state court remedies." Id. at 839. It seems to us that the court then proceeded to ignore this holding, finding that the petitioner was barred from federal habeas review under Fay by his "strategic behavior," even though he had neither "by-passed the orderly

27

procedure of the state courts" nor "forfeited his state remedies."[0]  We respectfully decline to follow suit.

We have found no Supreme Court case and no Court of Appeals case other than Brownstein that recognizes or gives content to the concept of "strategic behavior" outside the context of a state procedural default.[0]  Moreover, we think it

_____

[0]We perceive some irony in the fact that Brownstein finds a "strategic behavior" bar implicit in Fay.  In Fay, it will be recalled, the state procedural default was a failure to assert the coerced confession claim in a direct appeal.  Noia made a deliberate decision not to appeal in part because he had not received a death sentence and feared he might receive one if convicted after a new trial.  Only fourteen years later, after the state's ability to retry him in the absence of the confession had been impaired, did he seek collateral relief, first from the state and then from the federal court.  The Supreme Court recognized that Noia had obtained a benefit from his procedural default. His strategic behavior was of no moment, however, because "[u]nder no reasonable view can the State's version of Noia's reason for not appealing support an inference of deliberate by-passing of the state court system."  372 U.S. at 439 (emphasis supplied).

[0]All but one of the habeas cases the district court cited as authority for refusing to entertain Reynolds' habeas petition involved bars to federal habeas review premised on state procedural default, forfeiture rules which the defendants and/or their counsel were or should have been aware of, or, equivalently, a petitioner's deliberate abandonment of state recourse in favor of collateral federal review.  See Reed v. Ross, 468 U.S. 1, 8 & n.5, 10 (1984) ("Under North Carolina law, exceptions to jury instructions must be made after trial if they are to be preserved for appellate review, and errors that could have been raised on appeal may not be raised for the first time in postconviction proceedings.");  Wainwright v. Sykes, 43 U.S. at 76 n.5 (Florida Rule Crim. Proc. 3.190(i) imposed a "contemporaneous objection rule"); Henry v. Mississippi, 379 U.S. 443, 445, 448 & n.3 (1965) (petitioner failed to comply with a Mississippi contemporaneous-objection requirement; procedural defaults in state proceedings do not prevent vindication of federal rights in federal court except "where state rule is a reasonable one and clearly announced to defendant and counsel"); Beaty v. Patton, 700 F.2d 110 (3d Cir. 1983) (rather than petition Pennsylvania Supreme Court for allocatur, defendant petitioned federal court for writ of habeas corpus); United

would be unwise and unfair to impose upon defense counsel the burden of determining, on pain of having waived their clients' right to federal habeas review, not only whether each tactical trial choice is permissible under state law but also whether it may ultimately be considered by a federal court to constitute "strategic behavior."

Finally, we believe application of the Seventh Circuit's "strategic behavior" concept to bar federal habeas review in this case would do by way of federal law precisely what we said in Reynolds I Delaware could not do by way of state law -- bar federal habeas review through the creation and retroactive application of a contemporaneous objection rule Reynolds' counsel had no reason to anticipate. Clearly, the Supreme Court could impose a "strategic behavior" restriction on access to federal habeas review as the dissent suggests. We do not believe it has done so, however. Further, having determined, as we recognized

---

States ex rel. Abdul-Sabur v. Cuyler, 653 F.2d 828 (3d Cir. 1981), aff'g 486 F. Supp. 1141, 1162 & n.31 (E.D. Pa. 1980) (Becker, Dist. J.) ("classic example of waiver"; "under Pennsylvania law, contemporary-objection is required to preserve an issue for appeal"), cert. denied, 454 U.S. 1088 (1981); Green v. Rundle, 452 F.2d 232, 236-37 (3d Cir. 1971) (under Pennsylvania law, motions to sever multiple indictments and motions regarding jury instructions must be made on timely basis).

The final habeas case relied upon by the district court is Estelle v. Williams, 425 U.S. 501 (1976), which we understand to have granted habeas review and to have addressed the merits of the petitioner's claim. Estelle ruled that, because the petitioner had not asked to wear civilian clothing during his state trial, the state could not have "compelled" him to be tried in prison clothing in violation of the Fourteenth Amendment. 425 U.S. at 512-13.

in <u>Reynolds I</u>, that states may not bar federal habeas review under the independent and adequate state ground doctrine of <u>Sykes</u> by unfairly applying a new contemporaneous objection rule retroactively, we doubt that the Supreme Court would see fit to create and retroactively apply a contemporaneous objection rule of its own.[0]

---

[0]<u>Cf.</u> <u>Ford v. Georgia</u>, 111 S. Ct. 850, 858 (1991) (retroactively applied state procedural-default rule not adequate to preclude direct review by U.S. Supreme Court of equal protection attack on state court judgment).

**IV.**

The judgment of the district court will be reversed, and this proceeding will be remanded to the district court for consideration of the merits of Reynolds' petition.

George L. Reynolds v. Jack C. Ellingsworth, Warden;
Charles M. Oberly, III, No. 93-7106

SLOVITER, Chief Judge, dissenting.

Last term in Brecht v. Abrahamson, 113 S. Ct. 1710,
1719 (1993), the Supreme Court reiterated the principle that
state court convictions should be challenged primarily through
direct review. The Court emphasized, as it has before, that the
Great Writ of habeas corpus is to be reserved for extraordinary
situations:

> The principle that collateral review is
> different from direct review resounds
> throughout our habeas jurisprudence. Direct
> review is the principal avenue for
> challenging a conviction. "When the process
> of direct review . . . comes to an end, a
> presumption of finality and legality attaches
> to the conviction and sentence. The role of
> federal habeas proceedings, while important
> in assuring that constitutional rights are
> observed, is secondary and limited. Federal
> courts are not forums in which to relitigate
> state trials."
>
> In keeping with this distinction, the
> writ of habeas corpus has historically been
> regarded as an extraordinary remedy, "a
> bulwark against convictions that violate
> 'fundamental fairness.'" "Those few who are
> ultimately successful [in obtaining habeas
> relief] are persons whom society has
> grievously wronged and for whom belated
> liberation is little enough compensation."

Id. at 1719 (citations omitted).

Significantly, the Court also noted that "it hardly
bears repeating that 'an error that may justify reversal on
direct appeal will not necessarily support a collateral attack on
a final judgment,'" Id. at 1720 (internal citations omitted),
and that "'[l]iberal allowance of the writ . . . degrades the

32

prominence of the trial itself' and at the same time encourages habeas petitioners to relitigate their claims on collateral review," Id. at 1720-21 (citation omitted).

In this case, the majority "ha[s] no difficulty in concluding that the evidence before the [state] court would have supported a factual finding that strategic decisions were made." Maj. typescript op. at 16. Nonetheless, the majority concludes that federal habeas relief is not barred under Fay v. Noia, 372 U.S. 391 (1963), because counsel's decision was made in a "legal landscape in which they could go forward in hope of an acquittal by the jury and raise the due process argument in a Rule 35 proceeding." Maj. typescript op. at 21. I respectfully dissent because I believe that the extraordinary remedy of habeas corpus is not meant to grant relief to someone who deliberately and strategically declined the opportunity to assert his rights during his state trial and direct appeal.


I.

Although the majority "assume[s] arguendo" that Fay "retains independent vitality" subsequent to the Supreme Court's decisions in Wainwright v. Sykes, 433 U.S. 72 (1977), Murray v. Carrier, 477 U.S. 478 (1986), and Coleman v. Thompson, 111 S. Ct. 2546 (1991), it does so only grudgingly, stating that there is "substantial support" for the view that Sykes' "independent and adequate state law ground" has "subsumed the 'deliberate bypass' rule of Fay." Maj. typescript op. at 11. Because the viability

33

of _Fay_ underlies my approach to this case, I discuss it notwithstanding the majority's concession.

One of the two principal prongs of the _Fay_ holding was that a state procedural default did not constitute a bar to federal court review under the federal habeas statutes comparable to the bar of direct Supreme Court review effected by an adequate and independent state law ground. The other prong gave discretion to the federal courts to deny relief to a petitioner who had deliberately bypassed the orderly procedure of the state courts and, in so doing, forfeited available state court remedies. See _Fay_, 372 U.S. at 428-35.

Fourteen years later, after gradual erosion of the first prong of the _Fay_ rule, the Supreme Court in _Sykes_ reinvigorated the independent and adequate state ground basis of precluding of federal habeas review because of procedural defaults. Instead of _Fay_'s "deliberate bypass" rule, the Court applied the "cause and prejudice" test to procedural defaults. The suggestion here by the majority that a procedural default may be tested only under the "cause and prejudice" test disregards the context in which the _Sykes_ rule replaced that of _Fay_.

It is no surprise that the Court itself has characterized the _Fay_ "deliberate bypass" test as a "lower standard" than that it adopted under the "cause and prejudice" test. See _Keeney v. Tamayo-Reyes_, 112 S. Ct. 1715, 1720 (1992). See also _Sykes_, 433 U.S. at 87 (the "cause" and "prejudice" standard is "narrower" than the _Fay_ test). _Fay_ was supplanted because the Court was uncomfortable with "an all-inclusive rule

34

rendering state contemporaneous objection rules ineffective to bar review of underlying federal claims in federal habeas proceedings -- absent a 'knowing waiver' or 'deliberate bypass' of the right to so object."  Id. at 85.  In light of that background, the principles and purposes behind habeas corpus, the policy against relitigation of matters that have been concluded, and the Court's recent jurisprudence, it is not likely that the Supreme Court would disapprove the continued vitality of the Fay "deliberate bypass" test in a situation like the present one where this court held the "cause and prejudice" test unavailable.[0]

## II.

One of the bases for the current habeas jurisprudence is the view expressed in Sykes, over a strong dissent by Justices Brennan and Marshall, that the Fay test was not sufficiently respectful of the states' interests in their procedural default rules.  The Court explained:

---

[0]Although the majority accepts without discomfort our holding in Reynolds v. Ellingsworth (Reynolds I), 843 F.2d 712, 719 (3d Cir.), cert. denied, 488 U.S. 960 (1988), I cannot avoid some comment on the curious nature of that decision.  As the majority notes, the Superior Court of Delaware, affirmed by the Supreme Court of Delaware, held that Reynolds had waived his right to object to the prosecutor's opening comments and the court's failure to sua sponte give a curative instruction because he failed to make a contemporaneous objection as required by the Delaware Supreme Court's earlier opinion in Conyers v. State, 422 A.2d 345, 346 (Del. 1980) (per curiam).  Nonetheless, despite the fact that in this very case the Delaware Supreme Court acknowledged that Conyers had enunciated such a rule, this court held that the absence of a governing "specific Delaware procedural rule" precluded our finding that Conyers constituted an adequate and independent state procedural ground supporting default.

35

> We think that the rule of <u>Fay v. Noia</u>, broadly stated, may encourage "sandbagging" on the part of defense lawyers, who may take their chances on a verdict of not guilty in a state trial court with the intent to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off.

433 U. S. at 89.

The Court again stressed the significance of state procedural rules in <u>Keeney</u>, 112 S. Ct. at 1720, where it held that the "cause and prejudice" test was applicable to a petitioner's negligent failure to develop material facts in the state court proceeding. The Court noted that "[i]n <u>Wainwright v. Sykes</u>, we rejected the application of <u>Fay</u>'s standard of 'knowing waiver' or 'deliberate bypass' to excuse a petitioner's failure to comply with a state contemporaneous-objection rule, stating that the state rule deserved more respect than the Fay standard accorded it." <u>Id</u>. at 1718 (citation omitted). The Court referred to its decision the year before in <u>Coleman v. Thompson</u>, 111 S. Ct. 2546 (1991), where "we described <u>Fay</u> as based on a conception of federal/state relations that undervalued the importance of state procedural rules." <u>Keeney</u>, 112 S. Ct. at 1718-19. In <u>Coleman</u>, the Court had stated:

> The cause and prejudice standard in federal habeas evinces far greater respect for state procedural rules than does the deliberate bypass standard of <u>Fay</u>. These incompatible rules are based on very different conceptions

36

> of comity and of the importance of finality
> in state criminal litigation.

111 S. Ct. at 2563.

A fortiori, habeas impinges at the very heart of federalism principles. The majority opinion's view that the federalism concerns that underlie Sykes' and Fay's default rules do not exist when there is no "independent and adequate" state procedural bar is belied by the Court's holding in McClesky v. Zant, 499 U.S. 467, 493 (1991). Even though there had been no state procedural default because the case arose in the context of the abuse of writ doctrine (which can be viewed as a default in a prior federal habeas petition), the Court recognized that federalism concerns are still implicated. It commented that "the doctrines of procedural default and abuse of the writ are both designed to lessen the injury to a State that results through reexamination of a state conviction on a ground that the State did not have the opportunity to address at a prior, appropriate time; and both doctrines seek to vindicate the State's interest in the finality of its criminal judgments." Id.

Admittedly in this case there may not have been a concerted effort to bypass all state review in favor of federal court review, but federalism, although an important rationale for habeas jurisprudence, is not the only consideration. The emphasis in McClesky on the significance of finality of criminal convictions ("Without finality, the criminal law is deprived of much of its deterrent effect." Id. at 491 (quotations omitted)) has been a frequent theme in habeas cases. See e.g., Keeney, 112

37

S. Ct. at 1718 ("The writ strikes at finality of a state criminal conviction, a matter of particular importance in a federal system.").

Moreover, the procedural default rules, including as well the Fay "deliberate bypass" test, are based, in part, on equitable principles. Thus, the holding of Fay "that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state court remedies" is based on the equitable principle that "a suitor's conduct . . . may disentitle him to the relief he seeks." 372 U.S. at 438.

IV.

The majority assumes, as indeed it must in light of the state court's evidentiary findings, that, in the words of the Delaware Supreme Court, "a strategic choice was made" by Reynolds' counsel in failing to object. App. at 10. Nonetheless, the majority concludes that despite these findings Reynolds' failure to object did not amount to a "deliberate bypass." Such a constrictive approach to "deliberate bypass" is inconsistent with the Fay Court's own explanation of what it encompasses:

> The classic definition of waiver enunciated in Johnston v. Zerbst, 304 U.S. 458, 464--"an intentional relinquishment or abandonment of a known right or privilege"--furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the

38

> federal court on habeas to deny him all
> relief if the state courts refused to
> entertain his federal claims on the merits.

Fay, 372 U.S. at 439.[0]

No Supreme Court decision supports the majority's view that Reynolds "strategic choices" did not constitute a "deliberate bypass" merely because Reynolds could have believed that he could bring his claim in a Rule 35 proceeding and therefore was not attempting to bypass the state courts.[0] Indeed, the only court of appeals to have considered the issue decided that a strategic decision not to raise an objection constituted a deliberate bypass.  In Brownstein v. Director, Illinois Dep't of Corrections, 760 F.2d 836 (7th Cir.), cert. denied, 474 U.S. 858 (1985), the state court failed to admonish defendant Brownstein of his right to a jury trial.  Brownstein knew that he was entitled to a jury trial, and could have asked for it but

---

[0]Notwithstanding the language of Fay requiring that the bypass be personal, and not that of the defendant's attorney, later cases have held that a litigant is bound by the conduct of his attorney.  See Henry v. Mississippi, 379 U.S. 443, 451 (1965) ("[C]ounsel's deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here."); see also McClesky, 499 U.S. at 494 ("Attorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default."); Murray v. Carrier, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."); see generally Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").
[0]We note in passing that there was no testimony by counsel that they had, in fact, adopted the plan hypothesized by the majority.

"deliberately chose to have two chances at acquittal," id. at 843-44, because his counsel believed he could "use the judge's omission to secure a new trial should he lose the first time around." Id. at 839. Despite the fact that there was no state court finding of procedural default to which the Sykes "cause and prejudice" rule would apply (because the state court had erroneously found there had been notice and waiver of a jury trial), the federal courts, both district and court of appeals, found a deliberate bypass under Fay.

The facts are strikingly similar to those here. In Reynolds I the Sykes "cause and prejudice" test was also found inapplicable. The majority's scenario for the strategy of counsel is that they, as did counsel in Brownstein, sought two chances, a jury acquittal or subsequent new trial. It follows that the reasoning of the Seventh Circuit is of particular relevance. In holding that "[Fay v.] Noia enables us to look beyond the state procedural rules themselves," id. at 842, the Brownstein court looked to equitable considerations under which "'a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" Id. (quoting Fay, 372 U.S. at 438). The Court thus held that "[i]n our judgment, [Fay v.] Noia goes beyond procedural defaults and allows federal judges to deny habeas relief whenever the petitioner's strategic behavior clearly requires it." Id. It continued, "the deliberate by-pass standard of [Fay v.] Noia, relying on general equitable principles, does not require the by-pass of a requirement; the passing by of a mere opportunity may be enough,

and in this case is enough, to call that standard into play." Id. (emphasis added). The court thus concluded, "Although [Brownstein] did everything state procedural rules required, [he] did not do everything he could have; and the reason he did not was a strategic one: he wanted the chance of another trial, if he lost the first time. . . . We hold that he is not entitled to federal relief." Id. at 844.

The majority, by disapproving the result reached by the Seventh Circuit, thus creates a circuit split. Although it purports to find support in Lefkowitz v. Newsome, 420 U.S. 283 (1975) and County Court of Ulster County v. Allen, 442 U.S. 140 (1979), neither of those cases is applicable. In both cases, unlike here, the state appellate courts had heard the merits of the petitioners' claims notwithstanding the claimed procedural defaults. Both Supreme Court opinions gave that as a significant reason why consideration on the merits by a federal court was not barred. See Lefkowitz, 420 U.S. at 292 n.9 ("But the Court also held that if the state courts have entertained the federal constitutional claims on the merits in a subsequent proceeding, notwithstanding the deliberate bypass, the federal courts have no discretion to deny the applicant habeas relief to which he is otherwise entitled.") (citations omitted).

The majority relies on the statement in Allen that "if neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." Allen, 442 U.S. at 154. One difficulty

41

with the majority's position is that the state courts did indicate that they viewed Reynolds' federal constitutional claim as barred by some state procedural rule and refused to hear his claim. The fact that this court did not agree with the state courts' interpretation of their own procedural rule, see dissent note 1 supra, and held that it was not "adequate and independent," Reynolds I, 843 F.2d at 719, does not mean that we can pretend that the state courts heard this claim on the merits when they did not.

It is important to note that notwithstanding the majority's skepticism that trial counsel "deliberate bypassed" the claim relating to the opening statement in the state trial court, the record is clear that appellate counsel made a deliberate decision not to raise the issue on direct appeal for tactical purposes. He testified:

> Q. Do you know the reason that was not raised on appeal?
>
> A. The reason it was not raised on appeal was because, as far as I am concerned, the better grounds for appeal were the interpretation of the stipulation regarding the truth serum and also the very good ground of the newly-discovered evidence when we had the investigating officer saying he believed the wrong man had been convicted.

App. at 77. Thus the case cannot be governed by Lefkowitz and Allen, where counsel raised the issue in the state appeals courts. Nor is it like the decision of Noia not to appeal, also cited by the majority as governing here. As Justice Brennan noted, had Noia appealed he would have run a substantial risk of

42

electrocution.  Thus, he stated, "under the circumstances [Noia's choice] cannot realistically be deemed a merely tactical or strategic litigation step."  Fay, 372 U.S. at 440.  On the other hand, Justice Brennan continued, "[t]his is not to say that in every case where a heavier penalty, even the death penalty, is a risk incurred by taking an appeal or otherwise foregoing a procedural right, waiver as we have defined it cannot be found.  Each case must stand on its facts."  Id.

Essentially, the "deliberate bypass" by Reynolds' counsel of the opportunity to object when it might have had a curative effect gave the district court the discretion to decline to exercise its habeas jurisdiction, and its decision to do so was reasonable.  The Supreme Court has repeatedly warned against using habeas to "give litigants incentives to withhold claims for manipulative purposes and [] establish disincentives to present claims when evidence is fresh."  McClesky, 499 U.S. at 491–92.  See also Brecht v. Abrahamson, 113 S. Ct. 1710, 1720–21 ("'liberal allowance of the writ . . . .' encourages habeas petitioners to relitigate their claims on collateral review"); Keeney, 112 S. Ct. at 1718 (Habeas review "may give litigants incentives to withhold claims for manipulative purposes.").

There are powerful reasons to discourage a defendant from bypassing opportunities to object during his trial.  As the Supreme Court stated in Estelle v. Williams, 425 U.S. 501, 508 n.3 (1976), a case cited by the majority, "if the defendant has an objection, there is an obligation to call the matter to the

43

court's attention so the trial judge will have an opportunity to remedy the situation."

One of the goals of procedural default rules is to encourage full factual development in state court. See Coleman, 111 S. Ct. at 2563. See also Brecht, 113 S. Ct. at 1721 ("state courts often occupy a superior vantage point from which to evaluate the effect of trial error"). This consideration was referred to expressly in Sykes where the Court noted the benefits of rules requiring defendants to make their objections during trial:

> A contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding. It enables the judge who observed the demeanor of those witnesses to make the factual determinations necessary for properly deciding the federal constitutional question. . . .

> A contemporaneous-objection rule may lead to the exclusion of the evidence objected to, thereby making a major contribution to finality in criminal litigation . . . the jury may acquit the defendant, and that will be the end of the case; or it may nonetheless convict the defendant, and he will have one less federal constitutional claim to assert in his federal habeas petition. . . . An objection on the spot may force the prosecution to take a hard look at its hole card.

433 U.S. at 88-89 (footnote omitted).

Perhaps the Court gave the most succinct summary of the rationale for its habeas jurisprudence in Sykes where it stated: "the state trial on the merits" should be "the 'main event,'. . .

44

rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing."  433 U.S. at 90.

On remand from this court, the district court made the "deliberate bypass" inquiry and found that it was bound by the findings of the state evidentiary hearing, which "was by all accounts full, fair, and adequate." Reynolds v. Ellingsworth, 1992 WL 404453, at *8 (D.Del. Dec. 31, 1992).  Based on those findings and the court's review of the record, the court concluded that Reynolds' attorneys chose not to object to the prosecutor's opening statement, preferring "to gamble that the jury would forget the references and eventually find Reynolds not guilty in light of the scanty case presented by the State." Id. at *9.  That was "precisely the kind of calculated decision that Henry v. Mississippi and related precedent warned against."  Id. The court concluded, similar to the holding in Brownstein, that "[a] defendant in state court may not, in short, use federal habeas proceedings as a hedge against the chance that his or her guess with regard to the jury will turn out to be incorrect." Id.

I agree with the district court.  Reynolds took his chances and he lost.  He engaged in the kind of strategic behavior that disentitles him to habeas relief.

45